No. 447

First Circuit

____

STEVENS v. SONNIER

____

(June 10, 1929. Opinion and Decree.)
(June 28, 1929. Rehearing Refused.)
(October 8, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

— —

Voorhies & Labbe, of Lafayette, attorneys for plaintiff, appellee.

Kennedy & Davidson, of Lafayette, attorneys for defendant, appellant.

ELLIOTT, J. This is a suit by Fred L. Stevens against J. Raoul Sonnier on six promissory notes, amounting in the aggregate to $685.

The notes were executed at Lafayette, La., on September 13, 1926, payable to The Brenard Manufacturing Co., or order, at Iowa City, Iowa, 2, 3, 4, 5, 6 and 7 months after date. They are signed, Attakapas Iron Works, by J. R. Sonnier, that being the name under which he does business, and of which he is the sole proprietor.

The plaintiff alleges that he is the holder and owner of the notes in due course for value before maturity in good faith, and without notice of any infirmity or defect in title.

The defendant denies liability on the notes; denies that plaintiff is a holder in good faith and without knowledge of the fraudulent manner in which they were obtained from him by the Brenard Manufacturing Co. He then sets out in his answer that he was induced by the agent of The Brenard Manufacturing Co. to agree to purchase radio sets described as, "2 Heraldyne Junior Receiving Sets; 4 Heraldyne Senior Receiving Sets and 1 Heraldyne De Luxe Radio Receiving Set"; said notes having been given under conditions set forth in a printed agreement entered into between him and The Brenard Manufacturing Co., a copy of which was annexed to his answer for reference.

That the radio sets were thereafter found by him to be practically worthless and unsalable and were shipped back to The Brenard Manufacturing Co., and were then in their possession.

That The Brenard Manufacturing Co. obtained the notes from him by false representations of fact, and thereby defrauded or attempted to defraud him, as well

as various other business men in that section.

That Fred L. Stevens was merely a person interposed by the said Brenard Manufacturing Co., and was not a holder of said notes in good faith, but with full knowledge of the nature of the fraudulent transaction by which the notes had been obtained from him.

It was shown on the trial that defendant signed an agreement for Brenard Manufacturing Co., called in the agreement an order and agency agreement relative to the sale of radios. That The Brenard Manufacturing Co. subsequently sent defendant, in connection with the agreement, an obligation called a bond.

The important conditions appear to be as follows:

"Gentlemen:
"Upon your approval of this order and agency agreement, deliver to me at your earliest convenience F.O.B. factory or distributing point, the articles mentioned below, which I purchase on the terms and conditions herein set forth, and no others, all of which I have read and found complete and satisfactory, and in payment for which I herewith hand you my notes aggregating $685, which you are to cancel and return to me if this sole and complete agreement is not approved by you."

Then follows the agency agreement. We quote only a part of it:

"You, the Brenard Mfg. Co., hereby grant to me and agree, as below set forth, to assist me in establishing an agency for this line in my town for a period of three years, subject to terms herein."

Then comes a stipulation about re-orders, etc.

Then a further stipulation:
"—and where I desire, you agree to accept my customer's notes or installment paper where properly endorsed to you, and to apply 60% of each cash payment against such re-order, and the remaining 40% of each cash to be mailed to me."

After this, a guarantee of sales.

"If my sales under this agreement do not amount to $685, you agree to either pay me the difference in cash, or repurchase the goods purchased hereunder, if returned to you in good order; and you are to send your bond in the sum of $685 to protect me in the conditions of this agreement."

Then, to make the last above paragraph binding, the purchaser or agent was to furnish names of persons, etc., to whom Brenard Manufacturing Co. was to send literature and who might be induced to take up the work of soliciting, etc.

The concluding clause in the agreement reads:

"In consideration of tying up territory and to protect you in your special methods and plans, and in your expenditures, this order cannot be countermanded or cancelled. No verbal or other agreement, not appearing herein, shall be binding upon you."

The plan seems to be that the party who enters into an agreement with The Brenard Manufacturing Co. is made their general or central agent to send in orders for radios, to be filled after orders for same had been obtained by sub-agents or solicitors. The parties giving the order to also give notes payable in installments. These installment notes might be forwarded to The Brenard Manufacturing Co. and credit for same obtained on the notes of the central agent. The general or central agent did not, on a casual reading of the agreement, appear to run any serious risk, because if no radio sets were sold, the sets for which he had given his own notes were to be re-purchased by The Brenard

Manufacturing Co., or the goods be returned. And to insure compliance on the part of The Brenard Manufacturing Co. with this understanding, their so-called bond was given.

The order for machines by the general agent, and which had been accompanied by his own notes, however, was not subject to be cancelled nor countermanded.

In the present case and in all the others of which we are aware, there was no order after the first one.

The Brenard Manufacturing Co. detached the notes of the central agent from the order to which they were attached by a perforated line at the time they were signed, and claims to have negotiated same before maturity, etc. But there is nothing in any of the stipulated conditions which releases The Brenard Manufacturing Co. from their implied warranty, that the radios would operate, work and perform in the way such things are understood to do, and which they were sold for the purpose of doing. And if they do not, then the maker of the notes given for the purchase price has a right under the law, Civil Code Art. 1882, Code Practice Art. 20, to set up the failure as a defense against a party who is not a holder for value in due course, before maturity in good faith. The right is redhibitory in character See Colt Company vs. Seal, 1 La. App. 618, and the cases therein cited.

So the first question is, whether The Brenard Manufacturing Co. could compel Sonnier to pay the notes sued on, were they the plaintiff's instead of Stevens?

Plaintiff contends that defendant has not alleged fraud. He urges that defendant's averments on that subject are mere legal conclusions.

Defendant's averments are sufficient to admit evidence to show that the radios were found to be practically worthless and unsalable. For that purpose and to that extent the parol evidence was properly admitted and will be considered.

Defendant requests us to rule on an objection he urged to the admissibility of the testimony of the plaintiff, taken by commission, on the ground that he had failed and refused to name all parties whose notes he held in the State of Louisiana, as transferee of The Brenard Manufacturing Co., and the addresses of such individuals. Plaintiff, in response, said:

"A. I haven't any such list of parties by states, and I cannot tell without referring to all my records; and in any event, I would not care to furnish this information."

The question was too broad and general, but the concluding remark, "in any event I would not care to furnish this information," admits an unwillingness and reluctance which we take into account in considering his answer to the cross-interrogatory which immediately precedes the one he refused to answer.

In regard to the right of The Brenard Manufacturing Co. to compel defendant to pay, the evidence shows that defendant, after receiving the radios, tested them out in good faith and in the only way in which it could be done with the means and help he could obtain in Lafayette; and which seems would have been sufficient in regard to other makes of radios. But this Heraldyne make could not be made to work in a way that would give satisfaction. He wrote The Brenard Manufacturing Co., informing them that the machines would not work, that he wished to return them, and asked them to return him his notes.

The testimony of the defendant, that the radios in question would not work and give satisfaction in the way they were, by implication, warranted to do, is well supported.

Mr. Loveland, questioned on this subject, testifies that when the machines were received back he had them tested out and they worked all right.

Mr. Secrest, employee and radio expert for The Brenard Manufacturing Co., also testified that these machines were properly constructed, tested out before shipment and worked all right.

But against this testimony in behalf of the plaintiff it appears that The Brenard Manufacturing Co. is under obligation to Stevens to protect him from any loss on these notes. And it is evident that they knew, and that Stevens knew, when defendant refused to pay the notes, that it was on the ground that the radios would not work nor perform in the way and for the purpose for which they had been sold.

It appears from the record that several others besides the defendant, living in the same general section of the State, had purchased the same makes of machines from The Brenard Manufacturing Co. about the same time, had found them unworkable and unsalable, and had made complaint, the same as the defendant had done.

The record discloses a situation under which it would have been reasonable for The Brenard Manufacturing Co. and Stevens to send a man to that section of the State who was well posted and informed as to the Heraldyne make of radios, to demonstrate to the defendant and others who had bought them, that they were all right and would work and perform as they were intended to do. But they did not do that; they did nothing to show their good faith in the machines.

The Brenard Manufacturing Co. wrote letters to defendants protesting against his refusal to pay, but they and the plaintiff depend alike for recovery solely on the legal position which the law accords to a holder and owner of notes in due course, for value before maturity, in good faith and without notice of any infirmity or defect in his title to the same.

We are satisfied that the machines are and were practically worthless and unsalable, as claimed by defendant. We therefore hold that the title of The Brenard Manufacturing Co. to these notes was defective; that they could not have compelled Sonnier to pay same. Therefore the burden of proof is upon Stevens to show that he acquired them in due course, in good faith and before maturity, and without notice of any infirmity or defect in title, as he claims to have done. Act 64 of 1904, Sec. 59.

The Brenard Manufacturing Co. is not a corporation, but a partnership composed of Theodore O. Loveland and James L. Records. The deposition of Theodore O. Loveland and of the plaintiff Stevens was taken by commission. Mr. Loveland says in his testimony, on direct examination, that these notes were detached from the order and endorsed and sold to Fred L. Stevens, an attorney and note broker, on October 14, 1926. That his partner, J. L. Records, endorsed the notes and delivered them to Mr. Stevens. He says:

"On that day, October 14, 1926, we sold to Mr. Stevens a large number of promissory notes besides these. The total face value of the notes we sold to Mr. Stevens that day, including these notes, was $5507.33, and Mr. Stevens paid to The Brenard Manufacturing Co. for the entire lot, $4846.45. Of course he paid for these

notes their proportionate share of the whole. He paid us by giving us his check on the Iowa City Savings Bank of Iowa City, which check was duly cashed by us."

He further testified that Brenard Manufacturing Co. had no interest in these notes since October 14, 1926.

Asked by cross-interrogatory, if he had concealed from Mr. Stevens the fact that the notes were originally part of the contract between his firm and defendant, he answered:

"No, nothing was concealed from Mr. Stevens at all about that. If he had asked about it we would have told him. Nothing was said to Mr. Stevens about that at all. We just offered him a bunch of notes for sale, and after some discussion as to the amount of notes and the discount, he bought same. The Brenard Manufacturing Company advised Mr. Stevens that every note offered to him for sale would be the notes of a person or firm, having a Bradstreet and Dunn rating, sufficient to warrant the amount of the notes which they had given. The Brenard Manufacturing Co. also agreed, in the event there was any difficulty in the collection of any notes which Mr. Stevens purchased from us, that we would defray any expense of collection arising in connection with any such notes. We could not have sold the notes if we had not made such an agreement.

"That Mr. Kenderdine represented them as attorney at the time the notes were sold to Mr. Stevens but he did not have anything to do with that. That he is now their attorney and has offices on the 3rd floor of the building they own in Iowa City. That the first floor was occupied largely by their radio factory; the second floor by their offices and the third by Mr. Kenderdine's offices. That Mr. Kenderdine had been their attorney for the past 7 years or more. That they had sold to Mr. Stevens one hundred thousand dollars worth of notes since May, 1926."

Mr. Stevens, in answer to direct interrogatories, says:

"That he is an attorney at law in Iowa City, in active practice, and a dealer in commercial paper. That he had never been employed by Brenard Mfg. Co. in any capacity. That he purchased the Sonnier notes from Brenard Mfg. Co. on October 14, 1926. That the Brenard Mfg. Co. called on him and asked him if he was in position to purchase a bunch of notes; that he told them he might, if the amount of notes was not too large, and we could agree on a discount; and I did purchase a bunch of notes; included in them were the notes I have just mentioned.

"That he bought $5507.33 of notes that day from them, that being the face value, and gave his check for $4846.45 in settlement. Among those were those notes in question.

"That he knew nothing about the notes having been attached to a contract; that nothing was said to him about any difference between the makers of the notes and Brenard Mfg. Co. that might lead to difficulty in collecting same, or he would not have purchased the notes. That he purchased the notes in due course, for value before maturity and without notice of infirmity. That the notes were endorsed and delivered to him by J. L. Records on October 14, 1926; that he paid for them by check on Iowa City Savings Bank, of Iowa City, which Brenard Mfg. Co. duly cashed. That he had the cancelled check in his possession; a copy of which was attached to his answer. That he endorsed and delivered the notes over to the bank for collection. That when payment was refused the bank notified him and he notified the bank to turn them over to G. A. Kenderdine, of Iowa City, for collection."

Asked by direct interrogatories why he turned them over to Mr. Kenderdine for collection, his answer was that he did not wish to collect his own paper. Further answering he said:

"Besides Mr. Kenderdine has specialized in handling wholesale collections and understands it thoroughly; and in any event the Brenard Mfg. Co. had agreed to defray any expense that I might be put to in the collection of any notes that I might purchase from them, including these notes.

Therefore I turned them over to Mr. Kenderdine."

That Brenard Manufacturing Co. were not interested in the notes since his purchase, except as endorsers. That nobody but himself, at the time of testifying, had any interest in the notes.

That Mr. Kenderdine occupied law offices on the third floor of The Brenard Manufacturing Co. building, and was the attorney for them at the time he acquired the notes. Asked if his own law practice was not largely that of a collector, and if his practice was not quite extensive in that line, his answer was, "I have a considerable practice in that line, yes, sir."

To questions about what difficulty he had encountered in collecting Brenard Manufacturing Co. notes, he said that he had been purchasing notes from The Brenard Manufacturing Co. since May, 1926, at the rate of about ten thousand dollars a month. That the general results on the notes had been highly satisfactory. A certain percentage of them had gone into controversy, but it had been extremely small and in those cases where he had controversy, he had been successful in practically every instance. In regard to the defense which was set up, he said he had been buying commercial paper and notes of all kinds for the past twenty years or more, and that he had hardly ever known a case where a note was being defended without the same standard defense being set up; namely, failure of consideration, misrepresentation, etc. That those were about the only defenses available against notes.

In the next question he was asked the name and address of all parties in the State of Louisiana whose notes he held as transferee of Brenard Manufacturing Co., and his answer was that he was not in possession of such list of parties by States; that he could not tell without referring to all his records; and that in any event he would not care to furnish the information asked for.

These answers of Messrs. Stevens and Loveland, taken altogether, indicate that the plaintiff Stevens and The Brenard Manufacturing Co. are working to the same end through Mr. G. A. Kenderdine, attorney for The Brenard Manufacturing Co.

Mr. Stevens is a practicing attorney himself, in active practice; his practice is largely that of a collector. He specializes in collections; his practice is quite extensive in that line, but he does not devote himself to the collection of the notes obtained by him from The Brenard Manufacturing Co. He obtained $5,507.33 in amount of notes in one bunch, but he sends word to the bank to turn them over to Mr. Kenderdine, an employee of The Brenard Manufacturing Co., who has offices on the third floor of their building, a convenient location for handling their notes. The testimony does not indicate that he went to see Mr. Kenderdine, or that Mr. Kenderdine ever went to see him to make arrangements about fees or costs, or to obtain authority to sue. The inference seems proper that Mr. Kenderdine knew what to do by virtue of his employment by Brenard Manufacturing Co., and acted accordingly.

The testimony leads us to the conclusion that plaintiff's claim that The Brenard Manufacturing Co. have had no interest in these notes since the purported transaction of October 14, 1926, and that since then the plaintiff Stevens is the only party having an interest, is based on empty forms. Their understandings, meth-

od of operation, etc., justify the inference that they are working together through Mr. Kenderdine toward a common end, the defeat of the equitable defenses which the maker of these notes had against The Brenard Manufacturing Co. That the purported transaction of October 14, 1926, was part of the understanding which both had ultimately in view. Their arrangement is not consistent with any other reasonable conclusion.

We take cognizance of our decision in the case entitled Stevens vs. Gaude, decided in December of last year, and of the admissions and facts established without dispute, on which it was based.

See:

Hubbs vs. Kaufman, 40 La. Ann. 320, 4 So. 58;

V. & A. Meyer vs. Tax Col., 41 La. Ann. 440 (p. 443), 6 So. 679;

Raymond vs. Villere, 42 La. Ann. 488 (p. 491), 7 So. 900;

Mower vs. Kemp, 42 La. Ann. 1007 (p. 1015), 8 So. 830;

Lattier vs. Abney, 43 La. Ann. 1016 (p. 1018), 10 So. 360.

The transaction whereby Stevens claims the Sonnier notes under an endorsement by J. L. Records on October 14, 1926, together with a bunch of other notes amounting in the aggregate to $5,507.33, for which a check for $4,846.45 purports to have been paid, a copy of which check is attached to the answers of Stevens in the present case, is apparently the same transaction whereby he claimed to have acquired the Gaude notes.

We have not before us the record of the Gaude case, but the report of it, 9 La. App. 664, shows that the decision was based on the testimony of Stevens himself and of J. L. Records, the other member of The Brenard Manufacturing Co. firm, given presumably in his presence. Their testimony was first taken by commission in the manner in which that of Stevens and Loveland was taken in the present case, but afterwards it was taken again, and on the second occasion they were examined orally, by agreement between Stevens and Gaude, before a notary public in Iowa City; and G. A. Kenderdine, on this occasion, appeared as the attorney for Stevens, and W. R. Hart, attorney of Iowa City, as attorney for Gaude. Messrs. Stevens and Records were first examined in chief by Mr. Kenderdine and then cross-examined by Mr. Hart. It was brought out on the cross-examination that Mr. Kenderdine had never acted as attorney for Mr. Stevens, except for the purpose of collecting the notes of The Brenard Manufacturing Co. That he was hired, employed and paid by The Brenard Manufacturing Co. to do that work. That G. A. Kenderdine, in the exercise of his authority as the attorney for Brenard Manufacturing Co., had in that case, employed local counsel, arranged for their fees, instructed suit, advanced costs for the purpose; that Mr. Stevens had taken no hand in the matter at all.

In the present case if Messrs. Stevens and Loveland had been subjected to the same cross-examination at Iowa City which Mr. Stevens and Mr. Records underwent in the Gaude case, it seems reasonable to suppose that their admissions would have been, in the main, the same.

It is shown by the answers of Mr. Stevens in the present case, that these notes were first placed in the hands of Mr. Kenderdine for collection. Mr. Kenderdine's employment by The Brenard Manufacturing

Co. also appears. And by reference to the Gaude case we are satisfied that the Sonnier notes are claimed by Stevens under the same transaction whereby he claimed to have acquired the Gaude notes.

It was testified to by Mr. Stevens and Mr. Records in the Gaude case, that Mr. Records had endorsed the notes and delivered them to the bank, by his direction. In another place Mr. Stevens stated that he deposited them in the bank, but upon the whole it did not seem that Mr. Stevens had really exercised any authority over the notes, and that in taking them, he had acted on the assurance of The Brenard Manufacturing Co. that the makers were financially able to pay, and that he had left the collection entirely under the control of The Brenard Manufacturing Co., who in turn acted through their attorney, Mr. Kenderdine. That fact is a reasonable inference in the present case, though not as clearly as in the Gaude case.

In deciding the Gaude case we said:

"Our conclusion is that Mr. Kenderdine, although conducting the examination in Iowa City in the name of and ostensibly as the attorney for Mr. Stevens, was in fact, not his attorney therein, nor in his employ, nor working in his behalf, but was the attorney for the Brenard Manufacturing Company, and that in bringing and prosecuting suit on these notes, and in the employment of local counsel for the purpose, he was, in fact, acting for and working in the interest of the Brenard Mfg. Co."

In the present case, the radios sold to Mr. Sonnier were practically worthless and unsalable. There was no valuable consideration received by Mr. Sonnier for the notes sued on.

The burden of proof is upon the plaintiff Stevens to show that he is a holder of the notes sued on in good faith and in due course. He has not shown this to our satisfaction. We are satisfied that he is not such.

The judgment appealed from is, therefore, contrary to the law and the evidence, and is erroneous.

The judgment appealed from herein is, for these reasons, annulled, avoided and set aside, and the demand of the said Stevens on the notes sued on is now refused and rejected at his cost in both courts.