No. 683

First Circuit

## COLLINS v. MAGEE

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)

Benj. W. Miller, of Bogalusa, attorney for plaintiff, appellant.

Brock & Carter, of Franklinton, attorneys for defendant, appellee.

ELLIOTT, J. Elinore W. Collins, doing business under the name of Federal Finance Association, is the plaintiff in this suit against E. L. Magee. The suit is on a note for $100, with interest, and 15 per cent attorney's fees, signed by E. L. Magee and Dallas O. Magee in solido, made payable to the order of the Brodie-Burnham Company at Chicago, Ill., and by its indorsement made payable without recourse to the order of Federal Finance Association.

The plaintiff alleges that she is the owner and the holder of the note in the usual course of business before maturity for valuable consideration without notice that same had been previously dishonored, if such was the case.

The defendant denies plaintiff's alleged ownership. He admits that she holds it, but denies that she is the owner thereof, and alleges that it is yet held by the Brodie-Burnham Company, to whom it was made payable. That the agent of the Brodie-Burnham Company acquired it from him by fraud and misrepresentation, its said agent representing to him that what he was signing was merely an agreement authorizing his minor son, Dallas Magee, to sign a contract.

That he did not know that he had signed a note or obligated himself to pay any sum whatever until demand was made. That

there was no consideration for the note; that its transfer to plaintiff was a mere collection scheme, the plaintiff well knowing when she accepted it for collection, that there was no consideration for the same.

E. L. Magee, defendant, relating what was said to him and explaining how he came to sign the note, abbreviated to substance and effect when such can be done without changing the meaning, says: "I was sick in the bed. A young man came into the room with my boy Dallas. The man told me that there were two scholarships to be let by the Franklinton school; that this boy of mine wanted the course, or he wanted him to have it. I told him that I was sick and didn't want to discuss it with him. He said it was an urgent matter and had to be attended to at the time if they got this course of study, of some kind. He kept insisting. I said I wanted to discuss it with my son, T. J. Magee, attorney at Mansfield, and if he said it was all right I would go into it; if not, I didn't want to fool with it. He said he had visited Mansfield and called on my son, T. J. Magee; that the young man in the office was now working with him. I said, I know it. He said that T. J. Magee gave his approval of Dallas taking the course; that he was taking it himself. That caused me to feel favorable to it. I found out later there was nothing to that; that it was not true at all. He said that $30.00 would cover the cost of the course; that I would have to sign a permit of release, as my son was a minor. That me or my wife could sign the release; that it would be very little trouble to me if I or my wife signed it and gave him a check or cash for $30.00 for the course.

"That he did not realize that he was signing a note, but thought he was signing an agreement to release the boy as a minor. That when written to and told that he had signed a note, he wrote back and said he did not; that he had paid it by check. That at the time of signing the note he also paid the party $30 cash or gave him a check for that amount."

James T. Magee, defendant's brother, and C. C. Simmons say they were in the room with defendant at the time and heard the conversation between him and the party who secured his signature to the note, and they both corroborate him as to what was said. They say that they raised defendant up in the bed so he could sign his name to what was said to be a minor's release.

It was admitted in the note of testimony that, if T. J. Magee was present, he would swear that he is the son of E. L. Magee, the defendant. That he is a practicing attorney at Mansfield, DeSoto parish, La. That no representative of the Brodie-Burnham Company or the Federal Finance Association or Elinore W. Collins has ever called on him, or that he had ever given his indorsement of any course, correspondence course, or any business carried on by them or either of them. That the first he ever heard of them or of their course or of any indorsement or any notice that he ever had of any transaction with them was when his father, E. L. Magee, told him what the agent of this company or correspondence school said, or the statement made by the agent of their school or company.

The testimony of the agent, who secured defendant's signature to the note was not taken, his name not mentioned, his whereabouts not disclosed. A name written at the top of the note may be that of the party; it cannot be made out with certainty, the evidence does not throw any light on that matter.

The failure to take the testimony of the

party who obtained the note is not explained. The statement of the agent that T. J. Magee had approved of the course for Dallas and was taking it himself was calculated to deceive the father, E. L. Magee, as to the merit of the course, and did influence him, and, according to the uncontradicted testimony of T. J. Magee, the statements of the agent on that subject were untrue.

Then again it appears from the uncontradicted testimony of E. L. Magee, James T. Magee and C. C. Simmons that the Brodie-Burnham Company agent held out the paper sued on to defendant, not as a note, but as a permit, release, or authorization for his son Dallas to avail himself of a scholarship offered in some correspondence school, and that defendant signed it, supposing it to be such.

We therefore find that the above facts to which they have testified have been proved, and that the note in question was obtained from defendant, by the agent of the Brodie-Burnham Company by fraud, within the sense and meaning of the law on that subject. Civ. Code, art. 1847, Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9. It follows from this finding that the title of the Brodie-Burnham Company to the note sued on was defective.

It additionally appears that no consideration in reality existed for the note. According to E. H. Lyberg, secretary, treasurer, cashier of the Brodie-Burnham. Company, the Brodie-Burnham Company received from E. L. Magee an order for a course of study, accepted his contract for the course and this note as payment for the same. According to the witness, the course was in the American Extension University of Los Angeles, Cal. The course, he says, is available to defendant any time he will accept it, as it is held subject to his order. The Brodie-Burnham Company, he says, has paid for the books and study material, and the university is ready to render its service at any time it is asked for. But, as against this, no order for, nor contract between, the Brodie-Burnham Company and defendant was offered in evidence indicating that defendant was entitled to such a course; no showing is made that there is an established and recognized institution of learning of that name located at Los Angeles; nothing, outside of the statements of the witness indicating that the Brodie-Burnham Company, a corporation domiciled in Chicago, has authority to so contract for a correspondence school in California. It is a rule of evidence that:

"Where the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party." Greenleaf, vol. I, Subject, Burden of Proof, sec. 79.

If a course in an established and accredited correspondence · school supported the note, the fact was peculiarly within the knowledge of the plaintiff and the evidence to show it accessible to her. Therefore the absence of the order which Mr. Lyberg says was given for one, the contract which he says was entered into in regard to same, and the charter of the institution which was to do the teaching, negatives the reality of the course.

Section 55 of the Negotiable Instrument Act (Act No. 64 of 1904) provides that:

"The title of the person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration."

Sections 24 and 25 provide that:

"Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration."

"Value is any consideration sufficient to support a simple contract."

Section 59 of the act provides that:

"When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that· he * * * acquired the title as holder in due course." Appalachian Corporation v. Ayo, 145 La. 201, 82 So. 89; Parks v. Hughes, 145 La. 221, 82 So. 202; Steeg v. Codifer, 157 La. 298 and 299, 102 So. 407.

The testimony of the plaintiff taken by commission in Chicago helps to support a conclusion adverse to her claim as owner and holder in due course. She claims to be doing business in the city of Chicago, under the trade-name of Federal Finance Association. That, acting under her trade-name, she purchases notes and accounts from various parties at a discount and collects them. That she has two regular clients, the Eastern Funding Company and the Brodie-Burnham Company. That her clients merely advise her that they have notes for sale, and, after investigating the maker, she purchases them. That she purchased the note in question from the Brodie-Burnham Company, receiving it through the mail. That the Brodie-Burnham Company sent her several notes at the same time she received the note in question. That she sent them a check for the aggregate amount, less a discount of 33⅓ per cent. That her place of business is about 8 miles distant from that of the Brodie-Burnham Company. That she purchased the note on March 9, 1926. Asked to produce the check showing payment, she stated that it was over three years old and that she did not have it in her files.

The note shows on its face that it was signed at Franklinton, La., on March 2, 1926, and shows on its back that the Brodie-Burnham Company on March 9, 1926, indorsed it, without recourse to the plaintiff. It was presumably mailed at Franklinton for transmission to Chicago by the usual train service which is indirect and results, we assume, in some delay. The position of the plaintiff, that this note, after having been received by the agent of the Brodie-Burnham Company at Franklinton, was transmitted to the Brodie-Burnham Company at Chicago, its receipt notified to her, and that she then investigated the maker and notified the Brodie-Burnham Company of her willingness to buy and negotiate the price before its indorsement to her, borders closely on the impossible. It is not claimed that defendant is a business man, whose financial standing may be learned from the mercantile agencies. Plaintiff could have sent a telegram to Franklinton and received a reply, but such celerity of negotiation concerning such a small note is so unusual that, if it had been done, it would have tended to negative the idea of an acquisition in due course. It is not claimed that plaintiff made any inquiry at Franklinton concerning defendant. If it had been done, it could, and no doubt would, have been shown on the trial. We are satisfied that none was made; that the Brodie-Burnham Company, upon receipt of the note, immediately indorsed it and mailed it to the plaintiff. She says that she received it by mail. Plaintiff could not, working in the ordinary way, after having been advised by the Brodie-Burnham Company that it had this note for sale, have investigated the maker at Franklinton in such a way as to accomplish the purpose for which such investigations are made, previous to the indorsement to her. No reason for such hurry existed that we can perceive from the record, except that the

Brodie-Burnham Company, apprehensive that it could not enforce payment by suit in its own name, proceeded without delay to indorse and mail it to the plaintiff, pursuant to a previous understanding with her whereby she was put forward as holder, before the. first installment of the note became due, for the purpose of giving her the apparent position of a holder in due course.

Section 56 of the Negotiable Instrument Act provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In Lanfear v. Blossman, 1 La. Ann. 148, the court, at page 156, 45 Am. Dec. 76, quotes from Story on Bills of Exchange, sec. 194, as follows:

"What circumstances will amount to actual or constructive notice of any defect or infirmity in the title to the bill, so as to let it in as a bar or defense against a holder for value, has been a matter of much discussion and of no small diversity of judicial opinion. It is agreed on all sides that express notice is not indispensable, but it will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade on the transaction, and to put the holder on enquiry."

In La. State Bank v. Orleans Navigation Co., 3 La. Ann. 294, the court said:

"Express notice is not necessary to charge the holder with what the law considers to be notice of any defect or infirmity in a note or bill, so as to let in a defense against a holder for value; it is sufficient, if the attending circumstances are of such a positive and pointed character as to cast a shade on the transaction, and to put the holder on enquiry."

In Hays v. Lapeyre & McCaleb, 48 La. Ann. 749, the court says, at page 753, 19 So. 821, 823, 35 L. R. A. 647:

"Direct and express notice is not always indispensable, to take notes out of the rule of commercial law and cut off the equities.

"When the circumstances are such as to bring a particular case under the operation of that rule, the maker of the note is legally entitled to insist upon its application regardless of the question of actual knowledge on the part of the purchaser of the note."

We quote from Ruling Case Law, vol. 3, Subject, Bills and Notes, sec. 239, as follows:

"It has been said that good faith means payment of value for the instrument, but the payment of a valuable consideration is not alone sufficient to establish good faith. Nor does the additional fact of acquisition before maturity establish a case of bona fides. It should appear also that the facts and circumstances attending the transfer were not such as to charge the transferee with notice of a defect or infirmity in the paper"—citing, as authority, Vairin v. Hobson, 8 La. 50, 28 Am. Dec. 125.

The proper appreciation of what the plaintiff and Mr. Lyberg says about her method of acquiring notes from the Brodie-Burnham Company negatives the statement of the witness that she is not employed by or connected in any way with that company. The facts and circumstances further indicate that her claim of ownership herein is not based on a negotiation and purchase at a discount of 33⅓ per cent; but that the note sued on is in her hands pursuant to some arrangement entered into between her and the Brodie-Burnham Company before the Brodie-Burnham agent obtained the note from defendant and whereby notes obtained by the Brodie-Burnham Company are forthwith sent to her, the

purpose and object of which is to cut off equitable defenses which the makers might urge against the Brodie-Burnham Company. We are satisfied that plaintiff was fully cognizant of the purpose and object of the present indorsement at the time she received the note. Such having been the case, the negligence of the defendant in signing a paper without having read it, and for which no consideration existed, can not avail the plaintiff. She can no more recover on the note than the Brodie-Burnham Company could. The Brodie-Burnham Company could not compel payment, consequently the plaintiff, having no greater right than it had, cannot compel payment to her.

The lower court rejected plaintiff's demand, giving reasons, from which we excerpt the following:

"The answers of the plaintiff to the interrogatories propounded to her are not satisfactory as to her ownership. The court does not believe that this woman, or the company which she professes to represent, are the owners in good faith of this note, but from all appearances, that it is a collusive scheme between the Federal Finance Association, Elinore W. Collins and this Correspondence School to perpetrate a fraud.—The note was obtained absolutely by misrepresentation and fraud was perpetrated," etc.

The defective title of the Brodie-Burnham Company placed the burden of proof upon the plaintiff to show that she was a holder in due course. We find that she has not proved it. The judgment appealed from is correct.

Plaintiff-appellant to pay the cost in both courts.