TOLMAS v. NORWOOD

(January 9, 1931. Opinion and Decree.)
(February 2, 1931. Rehearing Refused.)

Sidney G. Roos, of New Orleans, attorney for plaintiff, appellant.

Edwin J. Prinz and Sol S. Goldman, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. Plaintiff sued defendant for the sum of $130, alleging that he was the holder and owner for value before maturity of a certain promissory note dated October 30, 1929, executed by the defendant and payable to the order of Osyka Realty Company, which had endorsed the note without recourse to the Klema Realty Company, Inc., which, in turn, negotiated the note to the plaintiff.

Defendant denied liability, averring that the note originally had been identified by contract of lease for the premises No. 1136 Second street, this city; that the property leased by her was subject to a mortgage, which was assumed by the Osyka Realty Company; that the Klema Realty Co., Inc., in purchasing the property from the Osyka Realty Company, by private act dated September 5, 1929, had taken cognizance of the lease; that the homestead holding the mortgage had foreclosed and caused the premises to be seized and that defendant was compelled to pay the rent to the civil sheriff and therefore the consideration for the note had failed, as the lessor failed to maintain respondent in peaceful possession of the premises; that plaintiff had taken the note by assignment and therefore subject to the equities that might exist between the original parties; and that, in the alternative, should the court hold the note to be a negotiable promissory note received before maturity, the plaintiff did not acquire the note for a valuable consideration and that he was not a bona fide holder in due course, because he knew that the Osyka Realty Company and the Klema Realty Co., Inc., had failed to pay the homestead installments and that the foreclosure proceedings were imminent.

After a lengthy trial, the judge, a quo, reached the conclusion that the plaintiff was not an innocent holder for value in due course before maturity, and accordingly dismissed his suit. Plaintiff has appealed.

Pretermitting any discussion of the question of whether the note was merely assigned and, hence, subject to the equities existing between the original parties, and assuming that it was negotiated by endorsement, the most favorable view that we can place upon the case as far as plaintiff is concerned, we pass to a consideration of the question of whether or not the plaintiff was a bona fide holder for value in due course before maturity.

There is no dispute that the lease under which the note was given was breached as a result of the foreclosure proceedings and that, if defendant is forced to pay the plaintiff, she will not receive any consideration therefor.

In the case of Steeg v. Codifer, 157 La. 298, 102 So. 407, 409, the Supreme Court said:

"As between the maker and payee of said note, it is clear therefore that the defense of fraudulent misrepresentation has been established. This being true the burden rested upon plaintiff to prove good faith and want of knowledge of such equities. Neg. Ins. Law, Sec. 59." (Act 64 of 1904.)

In the case of Stevens v. Sonnier, 11 La. App. 398, 122 So. 894, 897, the proof showed that the consideration for the note had failed, but the holder of the note sought to avoid the effect of failure of such consideration by showing that he was an innocent holder of the notes before maturity, etc. The court said:

"Therefore the burden of proof is upon Stevens (the holder of the notes) to show that he acquired them in due course, in good faith, and before maturity, and without notice of any infirmity or defect in title as he claims to have done. Sec. 59 of Act 64 of 1904."

From the foregoing it will be seen that once the maker of a negotiable note proves failure of consideration, the burden then shifts to the holder of the note to sustain his alleged position as a bona fide holder for value in due course before maturity.

Let us now examine the evidence in the case to determine if the plaintiff has borne the burden of proof required by law. The record shows that Colonel and Mrs. Collins owned the property in question and that the defendant leased the premises from them. The plaintiff, acting as real estate agent, sold the property for the account of Colonel and Mrs. Collins to the Osyka Realty Company on June 13, 1929. A homestead mortgage was placed upon the property and the Osyka Realty Company failed to pay it, which resulted in foreclosure proceedings. The Osyka Realty Company, on September 5, 1929, by act under private signature, in which the mortgage and conveyance certificates were waived and in which, apparently; the examination of title was also dispensed with, sold the property to the Klema Realty Co., Inc. The notarial and recordation fees on this sale were paid by plaintiff. This sale was not recorded until September 9, 1929. Plaintiff as real estate agent also negotiated this sale.

It appears that plaintiff and L. L. Morris jointly acquired 360 acres of land in the state of Mississippi from the Osyka Realty Company, which was a partnership consisting of C. J. Thomas and his wife,

Mrs. B. A. Thomas. Plaintiff testifies that he owned some land in St. Bernard parish, Louisiana, and also a note for the sum of $1,000 signed by Colonel and Mrs. Collins, which he claims represented his commission for the sale of the Collins property. When the Osyka Realty Company sold to the Klema Realty Co., Inc., the latter did not give up anything of value and the sale price was more than $10,000 less than the Osyka Realty Company, just about two months before, had paid for the property. The Osyka Realty Company endorsed the defendant's rent notes to the Klema Realty Company without recourse and, in turn, the Klema Realty Co., Inc., endorsed and delivered the notes to the plaintiff, who gave, as a consideration therefor, the $1,000 Collins note, and also conveyed the 360 acres of land in Mississippi to Mrs. B. A. Thomas, the wife of C. J. Thomas, from whom, acting under the firm name of Osyka Realty Company, plaintiff and Mr. Morris, just a short time before, had purchased the property. Morris accepted from plaintiff for his share in the rent notes, certain lots in St. Bernard parish.

The plaintiff admitted, in response to questions by the judge below, that his equity in the 360 acres of land was $1,800 and that he was the owner of Colonel and Mrs. Collins' note for $1,000 and that these two items were the consideration which he gave for the series of rent notes of the defendant, aggregating $1,300. Thus, it will be seen that he gave a consideration of $2,800 for $1,300. This fact, together with the most irregular and unusual manner in which the above recited transactions were handled, would lead us to believe that these transactions were simulated for the purpose of giving the plaintiff the status of a bona fide holder for value in due course.

But again giving the plaintiff the benefit of the doubt, and assuming that the transactions were bona fide, the defendant proved by a preponderance of the evidence that, after the alleged negotiation of the notes on September 5, 1929, by the Klema Realty Co., Inc., to the plaintiff, he, together with C. J. Thomas, visited the home of the defendant for the purpose of having her husband endorse the rent notes. The plaintiff admitted under cross-examination that the notes at that time were in the possession of Mr. Thomas. Subsequent to this visit, and particularly on Monday, September 9, 1929, the plaintiff stated to the defendant's attorney that the defendant need not worry about the rent notes being negotiated, because Mr. Thomas, representing the Osyka Realty Company, and Mr. Steve Horvarth, representing the Klema Realty Co., Inc., were going to place the notes in the hands of the homestead, which held the mortgage. Plaintiff was the real estate agent who negotiated these various sales and admits that he was thoroughly conversant with the affairs of C. J. Thomas. We are convinced that he knew that the foreclosure proceedings were about to be instituted and that there would be a failure of consideration as far as the lessor was concerned. The record shows that the plaintiff failed to convince our learned brother below that he was a bona fide holder for value in good faith before maturity, and, from a careful reading of the record, we have come to the conclusion that his finding was correct.

For the reasons assigned the judgment is affirmed.