KENNON, Judge.
Alleging that it was the holder in good faith for value and before maturity of a promissory note executed by defendant in favor of Pierce Brothers, plaintiff sued to recover $459.25 alleged to be the balance due, together with interest and 25% attorney’s fees.
Defendant in answer admitted his signature on the instrument but set forth that he thought he was signing an order for the meat display case involved and defended further upon the ground that- the equipment covered by the note had never been delivered by Pierce Brothers; that the plaintiff, Commercial Credit Corporation, had in course of its previous dealings with Pierce Brothers been put on notice and “guard” that Pierce Brothers were not delivering merchandise in some instances even though the act of sale and chattel mortgage set forth that merchandise had been in fact delivered; that Pierce Brothers, and not himself, had paid the first seven installments of the note sued on; that plaintiff was in bad faith and the demand should be accordingly rejected.
In a supplementary answer, defendant set forth that the payee of the note, Pierce Brothers, was an agent of plaintiff, Commercial Credit Corporation, in making credit sales of merchandise and that the note and chattel mortgage sued upon had been delivered by Pierce Brothers to plaintiff’s office before the figures and data had been filled in and before any witnesses had signed; that the plaintiff caused its own employees to sign as witnesses and one of its own employees to sign an acknowledgment to the act of mortgage in which it was stated under oath that this employee of plaintiff had seen the defendant execute this act of sale, when in fact and in truth such witness had not seen defendant sign nor been present when the documents were executed.
The District Court found for plaintiff and the case is before us on defendant’s appeal from that judgment.
Plaintiff, the Commercial Credit Corporation, engaged in the business of buying installment paper secured by chattel mortgage, and in June, 1947, maintained an office in the Guaranty Bank Building in the City of Alexandria, Louisiana. Pierce Brothers operate a retail merchandise establishment and place of business some twelve blocks distant from the office of the plaintiff corporation. On June 23, 1947, defendant entered this establishment and Pierce Brothers’ representative, a M-r. Es *169 trada, showed him a meat display counter, which defendant agreed to purchase for a price of $950, of which $250 was to be paid on delivery ($100 by the delivery of an old box and $150 in cash). At Estrada’s request, Miss Doris Daniel, another employee of Pierce Brothers, prepared an act of sale and chattel mortgage showing a total consideration of $1,001.50 ($51.50 being for carrying charges). The instrument recited that the meat display counter had been that day sold and delivered; that the seller had received $250 in cash and purchaser’s note for the $751.50 balance. This amount of $751.50 was filled in on a promissory note form with Pierce Brothers as payee and with the amounts payable at the office of plaintiff, Commercial Credit Corporation, New Orleans, Louisiana. Defendant signed both the note and chattel moi'tgage at the place where an X mark had been made.
The meat display counter was not delivered that day nor subsequently. No payment was made by defendant and his order for the merchandise was canceled some weeks later.
The first sheet of the act of sale and chattel mortgage was notarial in form, reciting that J. R. Estrada personally appeared to represent Pierce Brothers as seller and that Johnnie Setliff, Jr., defendant, personally appeared before the notary as buyer. The document was signed, above the signature of Johnnie Setliff, Jr., “Pierce Bros, by Doris Daniel.” No notary or witness signed the act of sale while same was in the office of Pierce Brothers.
Subsequent to. the execution of the note and act of sale and purchase by Setliff, it was' carried by Miss Daniel to the office of Commercial Credit Corporation. There it was witnessed by two employees of plaintiff, who in fact had never seen defendant or been near the Pierce Brothers place of business when the transaction was made. One of these witnesses appeared before a notary public, who was secretary to plaintiff’s attorney, and executed an acknowledgment stating that she executed the instrument as a subscribing witness and that same had been signed by defendant in her presence and in the presence of the other subscribing witness.
The note was payable in monthly installments of $41.75 each. Pierce Brothers, after no delivery of the display counter was made, agreed to meet the installment payments. It paid two installments on August 29, 1947, two more on November 29, 1947, a fifth one on December 29, 1947, a sixth one on February 10, 1948, a seventh one on March 3, 1948, making its last payment on November 23, 1948. No other payments were made by Pierce Brothers.
Early in 1948, plaintiff gave to defendant the first notice he had that it, or any one else, was claiming that an indebtedness was due by him by virtue of the June, 1947 transaction. Defendant promptly went to plaintiff’s Alexandria office. Plaintiff’s representative, in the presence of defendant, called Pierce Brothers’ office on the ‘phone. Defendant’s version of what plaintiff’s agent said — and we think the record bears out the truthfulness of his statement — is as follows: “A. He called them and told them he had been out to my place and it cost him ten dollars, and kinda winked at me, which I knew he hadn’t, and that he was tired of them sending victims up there, that I was the sixth victim, and called my name and told them he was going to put them out of business and stop their business up there if they didn’t straighten up that deal or something to that sort.”
No further action was taken until November, 1948, when this suit was filed against the maker of the note. Pierce Brothers was not made a party defendant.
Since the meat display counter was never delivered, there is no question but that there was a complete failure of consideration for the note sued upon. Apparently, Pierce Brothers acquiesced in the cancellation as the record shows that Pierce Brothers informed the Commercial Credit Corporation that no delivery had been made and agreed to “pay the box off on a monthly basis” and actually made eight of the eighteen monthly payments.
The Louisiana Courts have adopted the generally accepted rule that once the defendant has established want of con *170 sideration or other defect in the title of one transferring a negotiable instrument, the burden is then upon the holder not only to show that he took the instrument in good faith for value, but also to go further and prove want of knowledge on his part of the infirmity or illegality. The rule is described in 11 C.J.S., Bills & Notes, § 654, p. 66, as follows: * * * it is now very generally held that the Negotiable Instruments Act adopted the minority rule, and that the holder’s burden is not fully met by proof that he acquired the instrument before maturity and for value, but that in order to discharge the burden imposed by the statute, it is incumbent on him to prove every fact necessary to constitute him a holder in due course, namely, that he took the instrument before it was overdue, without notice of any previous dishonor, in good faith for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it. To satisfy this burden, the holder is required to disclose the facts that are peculiarly within his knowledge tending to show his good faith, or, as it is sometimes expressed, he must show all the circumstances under which he took the paper, with a view to determining his good faith as a holder; * *
The following quotation from Judge Higgins’ opinion in the case of Tolmas v. Norwood, 15 La.App. 492, 132 So. 148, shows that the Louisiana Courts have followed this rule for many years:
“In the case of Steeg v. Codifer, 157 La. 298, 102 So. 407, 409, the Supreme Court said: ‘As between the maker and payee of said note it is clear, therefore, that the defense of fraudulent misrepresentation has been established. This being true the burden rested upon plaintiff to prove good faith and want of knowledge of such equities. Neg.Ins. Law, § 59.’ Act No. 64 of 1904.
“In the case of Stevens v. Sonnier, 11 La.App. 398, 122 So. 894, 897, the proof showed that the consideration for the note had failed, but the holder of the note sought to avoid the effect of failure of such consideration by showing that he was an innocent holder of the notes before maturity, etc. The court said: ‘Therefore the burden of proof is upon Stevens (the holder of the notes) to sb.ow that he acquired them in due course, in good faith, and before maturity, and without notice of any infirmity or defect in title, as he claims to have done. Act 64 of 1904, § 59.’ ”
We examine the case before us to determine if plaintiff has sustained its alleged position as a bona fide holder. The record shows that there was a close relationship between Commercial Credit Corporation, plaintiff, and Pierce Brothers, the payee of the note. Mr. Estrada, Pierce Brothers sales manager, testified that all the credit sales be handled were on forms provided by plaintiff. These forms (the note sued upon is on one of these) make the obligation payable at the office of the Commercial Credit Corporation. In the act of sale and chattel mortgage, it is again specified that the installments are payable at the office of the Commercial Credit Corporation.
The proof is plain that at the time the act of sale was signed there had been no delivery and no down payment had been made. Plaintiff’s agent caused two of its own employees to subscribe their names as witnesses to the act of sale and further caused one of these employees to execute a notarial acknowledgment setting forth that she had witnessed the signing of the instrument by defendant in her presence and in the presence of the other subscribing witness.
The record further establishes that plaintiff’s agent knew .that Pierce Brothers had negotiated other notes, each secured by chattel mortgage and act of sale, reciting delivery of equipment which in fact had not been made. The fact that plaintiff’s knowledge or acquiescence in this practice of Pierce Brothers is indicated, at least, by its accepting the past due monthly payments from Pierce Brothers — without making demand upon defendant.
In the case of Collins v. Magee, 15 La.App. 66, 130 So. 267, 270, we find a resume of authorities as to what constitutes notice of infirmity in the title to a negotiable instrument, dating back to the first Louisiana Annual. After quoting Section 56 of *171 the Louisiana Negotiable Instrument Act,Act No. 64 of 1904, the Court quotes a case from Lanfear v. Blossman, 1 La.Ann. 148, 45 Am.Dec. 76, as approving the statement by Story on Bills of Exchange that express notice of the infirmity is not indispensable and cites Ruling Case Law as authority for the proposition that for such a holder to successfully establish a case of good faith, “ ‘It should appear also that the facts and circumstances attending the transfer were not such as to charge the transferee with notice of a defect or infirmity in the paper’—citing, as authority, Vairin v. Hobson, 8 La. 50, 28 Am.Dec. 125.”
Our conclusion is that no consideration was given to defendant for the note sued upon and that plaintiff has failed to show that it was the purchaser of the note without notice of this infirmity. On the contrary, we find that the record shows that the facts and circumstances attending the transfer of the note were such as to charge the plaintiff with notice of the infirmity in Pierce Brothers’ title to the note.
The judgment appealed from is reversed and judgment is now rendered dismissing plaintiff’s suit, with costs of both Courts.