CULPEPPER, Judge.
Plaintiff filed this suit against the makers of a promissory note for the balance due thereon and recognition of its mortgages on certain real estate, furniture and appliances. The defense is that the note and mortgages are void for fraud. From an adverse judgment, plaintiff appeals.
*186 The general facts show that the defendant, Edward Carrier, is a porter and shoeshine boy in a barber shop. He finished only the eighth grade in school. He is 30 years of age and lives with his mother, the defendant, Stella C. Carrier. Stella is 55 years of age and only finished the third grade. She has worked as a domestic servant most of her life.
The petition alleges there is a balance of $984.76 due on that certain note in the original principal amount of $1,061.76 made by the defendants, Edward Carrier and Stella C. Carrier, of date, February 20, 1964, and payable in 23 monthly installments of $25 each and a final installment for the balance due. This note is secured by a special mortgage on the home of the defendant, Stella C. Carrier, and a chattel mortgage on certain furniture and appliances.
The 1964 note was given to “refinance” a prior note in the sum of $600 which had been executed in about July of 1963 by the defendant, Edward Carrier. After the 1964 note was executed, Edward Carrier lost his job and was unable to pay any of the monthly installments of $25. Finally, plaintiff’s representative, Robert Webber, persuaded Edward to sign a check for $25, representing a delinquent installment.
There is a conflict in the testimony as to what transpired thereafter. Edward Carrier’s version is as follows: When he signed the check for $25 he told Mr. Webber that he had no money in the bank and no job. Nevertheless, Webber later threatened to have him put in jail if he didn’t cover the check. Webber suggested that Edward’s mother might pay it. Thereafter on the night of February 20, 1964, Webber met with Edward and his mother, Stella C. Carrier, at her home.
The two defendants testified that at Stella’s home Mr. Webber again threatened to send Edward to jail if they didn’t pay the check. Stella agreed to make the check good, but she steadfastly insists that she agreed to do nothing more than pay $25. Mr. Webber produced certain papers which he had prepared and the defendants signed them. Actually, these papers were the note, the mortgages and certain other documents. The defendants both testified that Webber told them the execution of the papers was for no purpose except to insure the payment of the $25 check as soon as Stella Carrier obtained funds in about March of 1964. Relying on these representations, the defendants signed the note and mortgage.
Mr. Webber testified he explained to the defendants that the signing of the new note in the sum of $1,061.76 was necessary to refinance the 1963 note, which was for $600. Admittedly, no new funds were advanced to the defendants. Mr. Webber was not able to explain satisfactorily the items composing the difference in the amounts of the two notes.
After hearing the testimony of the two defendants and of Mr. Webber, who were the only witnesses to this transaction, the trial judge accepted defendants’ version of the facts. The concluding paragraphs of the lower court opinion read as follows:
“The Court was impressed with the truthfulness of the testimony of Stella C. Carrier and Edward Carrier, but was not impressed with the truthfulness of the testimony of Robert H. Webber.
“In view of the fact that the signatures on the note sued on, as well as the signatures on the mortgage, were, in the Court’s opinion, obtained through fraud and misrepresentation, the Court is of the opinion that there should be judgment against the plaintiff and in favor of the defendant, Stella C. Carrier, dismissing plaintiff’s suit, and that there should likewise be judgment in favor of the defendant, Edward Carrier, dismissing plaintiff’s suit as of non-suit, as there was no evidence concerning the note for $600 executed by Edward Carrier on which a judgment could be rendered in favor of the plaintiff.”
*187 A determination of the facts depends largely on the credibility of the witnesses. In such a situation the reviewing court will not upset the findings of fact of the trial judge unless there is manifest error. LeBlanc v. Gauthier, La.App., 174 So.2d 267 (3rd Cir. 1965).
The plaintiff is not a holder in due course, it having taken the instrument with notice of the infirmity and defect in the title.[1] Plaintiff’s title was defective, it having obtained the signatures thereto by fraud.[2]
Under the facts found in the present case there is fraud sufficient to nullify the note and mortgages sued on. Defendants signed the note and mortgages thinking they were agreeing only to pay the $25 check. This error was caused by the intentional misrepresentation of Webber. If it had not been for this error, fraudulently induced by the plaintiff’s agent, the defendants would not have signed the note and mortgages. Hence, these documents are subject to nullification for fraud.
The judgment appealed dismisses plaintiff’s suit entirely as to the defendant, Stella C. Carrier. However Edward Carrier admits in his answer that he owes something on the 1963 note. Hence, plaintiff’s suit is dismissed without prejudice as to Edward Carrier.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.

. LSA-R.S. 7:52 and 7:56.

. LSA-R.S. 7:55; Collins v. Magee, 15 La.App. 66, 130 So. 267 (1st Cir. 1930). For a general discussion of “fraud in the factum” as a defense against holders in due course, an issue with which we are not here concerned, see 11 TulXaw Review 129 and 11 Am.Jur.2d 754 — 771. LSA-O.C. Article 1847 with reference to fraud in the procurement of contracts generally, would require the same result .as we have reached under the provisions of the Negotiable Instruments Law.