HOLMES ET AL. v. FALSHO REALTY. CO., INC.

(February 16, 1931. Opinion and Decree.)

Pierre D. Olivier, of New Orleans, attorney for plaintiffs, appellants.

H. L. Hammett, of New Orleans, attorney for defendant, appellee.

HIGGINS, J. This is a rule taken by the receiver of the Falsho Realty Company, Inc., against the United Motor Car Co., Inc., and P. A. Lavedan to show cause why the motor company should not deliver to the receiver two certain promissory notes of P. A. Lavedan and the proceeds of a third note which was paid by him to the motor company, and why Lavedan should not pay mover after he had obtained possession of the notes as holder and owner thereof upon the mover simul-

taneously executing to Lavedan a title deed to lots which the Falsho Realty Company, Inc., had agreed to sell to him and for which the said notes were given as a partial consideration.

Lavedan, being merely a nominal party, did not file any return to the rule, as he admits that the proceeds of the note should be paid either to the mover or to the motor company, according to who may be recognized by the court as the owner of the notes.

The motor company in its return to the rule denied the allegations of the mover that the Falsho Realty Company, Inc., was the owner of the notes and that they had been illegally negotiated to the motor company and that the officers of the motor company knew, at the time the company received the notes from Short, president of the realty company, that Short was not the owner of them and was without authority or right to pledge them as collateral security for his individual indebtedness to the motor company for an automobile purchased by him from it on time.

There is a stipulation between all of these parties in which it is agreed that the whole matter may be finally disposed of in this rule by having the court recognize either the receiver or the motor company as the owner of the notes, and upon the payment by Lavedan of the two unpaid notes, that the receiver of the Falsho Realty Company, Inc., shall convey title to Lavedan in accordance with its contract of sale of certain lots by it to him.

There was judgment in favor of the motor company recognizing it as the owner of the notes and ordering the receiver to transfer the lots to Lavedan.

The record shows that John P. Short was the president of the Falsho Realty Company, Inc., and, during the latter part of 1927, purchased a Hupmobile coupe from the motor company for about $1,500, making a small cash payment and giving notes for the balance. He paid one or two notes and then defaulted in the payment of several notes as they matured, and, on October 30, 1927, he owed the motor company $1,145, represented by the unpaid notes. Due to the fact that his creditor was pressing him to settle his account, Short brought to Joseph Ruhl, the president of the motor company, three promissory notes dated October 17, 1928, for the sum of $100, $150 and $200, respectively, and due respectively on November 20, 1928, January 20, 1929, and March 20, 1929, signed and endorsed by P. A. Lavedan. Mr. Ruhl first phoned for information to ascertain the credit standing of Lavedan and, this report being favorable, then called Lavedan to find out if his signature to the notes was genuine and if he recognized them as his lawful obligation. Lavedan answered in the affirmative and Ruhl then instructed the bookkeeper of the motor company to credit the notes to Short's account, which extended his account for six months, without any additional cash payment. In addition to this, Ruhl advanced Short $75 cash, based upon the consideration of the three notes.

It appears that the Falsho Realty Company, Inc., had agreed, in a bond for deed, to sell Lavedan certain lots on account of which Lavedan was making installment payments. On or about October 17, 1928, Short called upon Lavedan and, by reducing Lavedan's indebtedness to the realty company to the extent of $100, persuaded Lavedan to issue the three notes in question, covering the balance due on the con-

tract. Having obtained possession of these notes, Short then negotiated them to the motor company as payment or pledged them as collateral security for his debt, as above outlined. When the first note of $100 was due, November 20, 1928, Lavedan paid it to the motor company. On January 2, 1929, the motor company received a letter from an attorney demanding the return of the notes as being the property of the Falsho Realty Company, Inc., and, when the second note became due on January 20, 1929, Lavedan refused to pay it until it was ascertained who was the lawful owner of the notes in the controversy between the realty company and the motor company.

On June 5, 1929, the realty company was placed in the hands of a receiver due to gross irregularities on the part of Short and another stockholder, both of whom practically owned the corporation. The motor company refused to surrender the notes to the receiver and the present proceeding resulted.

It is the contention of the receiver that, upon showing that Short was without authority or title to negotiate the notes, the burden was on the holder to prove that it acquired title to the notes as holder in due course for value and that the evidence shows that the mover sustained the burden placed upon him, but that the motor company failed to show that it was a holder in good faith, without notice of the defective title of Short.

It is the contention of the motor company that the receiver failed in his attempt to rebut the presumption that it is a holder in due course of the negotiable paper under the Negotiable Instrument Act, and therefore, that it is entitled to be recognized as owner of the notes as a bona fide holder for value in due course; and further that the evidence clearly shows that the motor company neither had actual knowledge, nor was in bad faith in accepting the notes, and, therefore, it is the lawful owner thereof.

Section 59 of Act No. 64 of 1904, known as the Negotiable Instrument Act, reads:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

Sections 52 and 56 of the same act provide as follows:

"Sec. 52. A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In interpreting these sections, the Supreme Court of this state, in Tyler v.

Whitney Bank, 157 La. 249, 102 So. 325, said (syllabus):

"To constitute one a 'holder in good faith' he must have had no actual knowledge of any infirmity in note or defect in title of person negotiating it at time of negotiation to him, nor any knowledge of such facts that his action in taking it amounted to bad faith. Negotiable Instruments Law, Sections 52, 56."

Assuming that the receiver has shown that the title of Short, the person who negotiated the notes, was defective, and that the burden was then on the motor company to prove itself a bona fide holder for value in due course, which is the most favorable view we can take of the situation as far as the receiver is concerned, we will pass to a consideration of whether the motor company is charged with actual knowledge of the infirmity or defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith.

Lavedan, as a witness for the receiver, testified that, to the best of his recollection, at the time that Ruhl inquired of him, over the phone, if the notes that Short was tendering were the recognized legal obligations of Lavedan, that he told Ruhl that they were and that they had been given to Short in connection with the purchase of certain lots from the Falsho Realty Company, Inc.

Ruhl admitted that Lavedan told him that the notes were given in connection with the sale of the lots from the realty company to Lavedan, but that he was positive that this conversation took place after the payment of the first note of $100 on November 20, 1928, and on the occasion of the maturity of the second note on January 20, 1929, when payment was requested by the motor company. It appears that on January 2, 1929, the attorney for the Falsho Realty Company, Inc., had written the motor company a letter stating that the notes had been illegally negotiated to the motor company by Short, because they really belonged to the realty company. Apparently, Lavedan was also notified of the claim of the realty company, because he refused to pay the second note to the motor company, as he was unable to determine whether the realty company, or the motor company, was the lawful owner of the notes.

In this connection the record shows that at the time Short tendered the notes to the motor company he owed them $1,145 and that he was delinquent in his payments, and, as a result of the negotiation or pledge of the notes for security, the motor company deferred his payments for a period of six months and advanced him $75 cash. The receiver's evidence tending to show that the notes were accepted by the motor company in bad faith consists, principally, of the testimony of Lavedan, as above recited. It was further shown by the receiver that Short tendered the motor company a check of the Falsho Realty Company, Inc., in payment of one of the early installments on account of the purchase price of his car. It was also shown that Ruhl knew, or should have known, that Short was the president of the realty company and that he was in financial difficulties.

The motor company's evidence tending to show good faith consists principally of the testimony of Ruhl, as above set forth. It is also pointed out that the Hupmobile coupe was purchased new for $1,500 in the latter part of 1927 and that on October 30, 1928, the balance due the motor company was $1,145 and, hence, it would have been to the advantage of the motor company to have foreclosed its chattel mortgage at that time in order to have pre-

vented further depreciation upon the car, which was being used by Short in the real estate business. The notes in question are ordinary "bearer" notes and made payable to the order of "myself" and endorsed by Lavedan, and are plain notes without anything on their face to identify them as the realty company's property.

It appears to us that Ruhl was acting in good faith, because he did not accept Short's word that the notes were genuine, but called Lavedan to ascertain if this was so. We are also convinced that the conversation concerning the notes being given in connection with the sale of real estate was after the issue was raised by the attorney for the realty company claiming the ownership of the notes. The notes, being "bearer" notes, and not yet matured, were negotiable merely by delivery and any person accepting them in good faith for value would be under no obligation whatsoever to make inquiry, unless some suspicious circumstances arose in connection with their negotiation. It would have been foolhardy for Ruhl to have tried to protect the motor company by seeing that the notes were genuine and then to have accepted them and place the company at a serious disadvantage by advancing Short an additional $75 cash, as well as giving him an extension of six months on the then delinquent account, with the resulting depreciation on the automobile during that period, if he knew, or should have known, that the notes did not belong to Short, but to the realty company.

The judge of the trial court found that the motor company was in good faith and rendered judgment in its favor, and we believe, after a careful reading of the record, that his judgment is correct.

The judgment appealed from is affirmed at the cost of appellant.