HALL, Judge pro tern.
Plaintiff is the holder of a negotiable promissory note sued defendants as the makers thereof for the principal amount of the note plus interest and attorneys fees. The defense is fraud, failure of consideration and usury.
After trial on the merits the District Judge rendered judgment in favor of the defendants, dismissing plaintiffs demands. Plaintiff appealed.
The note sued upon is in the principal sum of $753.84, is signed by the defendants, and is made payable to the order of Universal Improvement Co. in 36 consecutive monthly installments of $20.94 each, beginning May 1, 1959 with 8% interest after maturity and 20% attorney’s fees, and is endorsed “without recourse, Universal Improvement Co. by R. J. Ulrich”.
Plaintiff asserts that it is a holder in due course of the note, and as such is not subject to any equities which might exist between the original parties.
The facts are briefly as follows: On March 28, 1959 one R. J. Ulrich, representing Universal Improvement Co. approached defendants at their home with a proposal to “air condition” their home by the application of some bright colored liquid which he had in a paint gun. After making a demonstration by spraying the liquid on a thin board and exposing it to the heat from a large electric bulb and inviting defendants to feel that the heat did not penetrate through the board, Ul-rich induced them to sign a contract for $490.00 for applying the liquid to the roof of their home, a structure described as being 38 feet by 50 feet including the washroom and garage. The contract called for a payment of $490.00 in monthly installments of $20.94 but made no mention of the number of installments.
At the time the contract was signed Ul-rich obtained information from the defendants as to where they worked, their rates of pay and other credit information.
The following day was Easter Sunday. On Easter Monday, March 30th the roof was painted with aluminum paint in about two hours by two men who came to the house during the absence of both defendants. (All of the paint later washed off during the first rain.)
That same evening Ulrich accompanied by another man called on defendants and induced them to sign some papers which turned out to be the $753.84 note sued upon, calling for 36 monthly payments of $20.94 each, and a printed document referred to as a “Completion Certificate”, stating *247 that the work had been completed to their entire satisfaction.
Although defendants admit that the note bears their signatures, they steadfastly deny that they remember signing it or that the amount thereof or the number of installments called for therein was ever discussed with them, or made known to them in any manner.
On Tuesday, April 1st plaintiff acquired the note from Ulrich for $490.00, the amount of the “air conditioning” contract.
The District Judge held that “these defendants were the victims of fraud and deception by the contractor, and the court is of the opinion that there was no consideration for the promissory note”. We thoroughly agree with this statement.
If the note was still held by the contractor there could be no recovery under it. The sole question to be decided here is whether plaintiff is a holder in due course, and more particularly, whether plaintiff purchased the note in good faith with no notice of infirmity in the instrument.
On this question the District Judge said: “The court is further convinced that the plaintiff had an agreement with the Universal Improvement Co. to handle the financing of such contracts, and that the plaintiff failed to exercise the proper precautions before accepting the promissory note from the Universal Improvement Co. It does not appear that the plaintiff is a holder in good faith, but that it had knowledge of what was happening in this transaction and that it is subject to the same defenses that could have been raised against the contractor”.
The testimony shows the purchase of the note in question by plaintiff corporation was handled by Mr. Lester Wainer, an official thereof. His testimony is to the effect that his corporation is engaged in the money lending and note discount business; that several weeks before purchasing the note in question here, he was approached by R. J. Ulrich, a complete stranger to him, who stated that he represented Universal Improvement Co. which was engaged in the roof contracting business; that Ulrich did not tell him, nor did he inquire, whether Universal Improvement Co. was a corporation, a partnership, or an individually owned business; that Ulrich did not tell him his address or telephone number nor where he could be reached, nor did he give Wainer any address or telephone number of Universal Improvement Co. Wainer testified that he made absolutely no inquiries on these subjects from Ulrich or anyone else, and was and remained throughout completely ignorant of anything whatever concerning Ulrich or Universal Improvement Co.
Nevertheless Wainer made an agreement with Universal Improvement Co., acting through Ulrich, to handle the financing of Universal’s roofing contracts, and gave Ulrich blank notes, blank credit reports and other forms for his use. Wainer further testified that, at least as regards the note in question here, the finance charges were not fixed by him but were fixed by Ulrich.
On March 28th the date of the roofing contract involved here Ulrich brought Wainer a partially filled out credit report on the defendants and Wainer’s office checked the information by telephone. This credit report is dated March 28th and contains figures showing the “unpaid balance" as being $490.00, the amount of the note as being $753.84 and the finance charges as being $263.84.
Wainer testified that these figures were placed thereon at the time he bought the note or sometime after. The credit report also contains a notation “3/30/59 he confirmed”. Wainer testified that this notation was in his own handwriting, and further testified that he made it after having had a telephone conversation with one of the defendants on March 30th and confirmed with him the amount of the note *248 and the number of installments. The testimony reveals that this telephone conversation took place between 5:30 and ó P.M. while Ulrich and the man accompanying him were at defendants’ home for the purpose of getting the note and “completion certificate” signed.
Obviously Wainer knew about the contract in question on Saturday, March 28th, the date it was signed. He bought the note on Tuesday, April 1st.
The defendants testified that when Ul-rich called on them on Monday evening between S :30 and 6 o’clock to get the papers signed he was accompanied by another man who was interested in getting the note and “completion certificate” signed. This man placed a telephone call apparently to one of plaintiff’s offices and then called Reverend Haughton, one of the defendants to the telephone. What was said during this telephone conversation is in dispute.
One of the defendants pointed out Lester Wainer in the court room and positively identified him as the man who accompanied Ulrich. The other defendant said the man resembled Wainer but was not sure of her identification. There is testimony intimating that if it wasn’t Wainer it was the manager of plaintiff’s Westwego office. We do not believe it was Wainer himself because Wainer was apparently the person to whom the telephone call was made.
It is well settled that “ * * * once the defendant has established want of consideration or other defect in the title of one transferring a negotiable instrument, the burden is then upon the holder not only to show that he took the note in good faith for value, but also to go further and prove want of knowledge on his part of the infirmity or illegality * * * ”. Commercial Credit Corporation v. Setliff, La.App., 44 So.2d 167. See also: Foster v. Washington, La.App., 105 So.2d 741; Toms v. Nugent, La.App., 12 So.2d 713; Steeg v. Codifer, 157 La. 298, 102 So. 407, 409.
“To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to had faith.”' LSA-R.S. 7:56 (Emphasis added).
In view of the fact that New Orleans and its vicinity is rampant with just such frauds as this, particularly on the part of itinerant roofing, siding and residential repair contractors, a fact of which a business man like Mr. Wainer cannot be ignorant, we do not believe that plaintiff has met the burden of proving good faith under the circumstances of this case. Mr. Wainer not only did not make any inquiries concerning Ulrich or the Universal Improvement Co., he, in our opinion, deliberately refrained from doing so for fear of what an inquiry would reveal. The discount herein was at a very high rate fixed' by Ulrich — higher than plaintiff’s usual rates. Wainer took Ulrich’s endorsement transferring the note on Ulrich’s statement that he, Ulrich, owned it, without knowing or inquiring whether the payee, Universal Improvement Co., was a corporation, a partnership, or individually owned,, and Wainer bought the note on April 1st when he knew from his own knowledge and from his own records that the $490.00' worth of work called for by the contract was commenced and completed between sometime on Saturday March 28th and' Monday March 30th at 5:30 or 6 P.M. The intervening day, March 29th, was Easter Sunday. This amount of work done in that short time was in itself enough to arouse suspicion. We note also that plaintiff did not place the manager of the Westwego office on the witness stand to refute the inference that he took part in-persuading defendants to sign the note and “completion certificate”.
In view of all the circumstances of this, case we do not consider that plaintiff has- *249 borne tlie burden of proving that it is a holder in good faith.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.