145 So.2d 672 (1962)
REX FINANCE COMPANY
v.
Martha R. CARY and Walter B. Cary, et al.
No. 324.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
Rehearing Denied October 29, 1962.
Certiorari Granted January 3, 1963.
*673 Clem H. Sehrt, Edw. J. Boyle, Sr., Virgil M. Wheeler, Jr., Edw. J. Boyle, Jr., and Peter J. Butler, New Orleans, for Martha R. Cary and Walter B. Cary, defendants-appellants.
Kathleen Ruddell, New Orleans, and Nicholas J. Gagliano, Metairie, for United States, defendant-appellant.
George E. Weigel, New Orleans, John E. Fleury, Gretna, and Charles J. Rivet, New Orleans, for plaintiff-appellee.
Before AYRES, DAWKINS and ALLEN, JJ.
H. W. AYRES, Judge.
The issues on this appeal concern the validity, vel non, of a pledge of a mortgage note executed by the defendants, Martha R. Cary and Walter B. Cary, and its rank as a privilege with an income tax lien asserted by the United States of America upon the property mortgaged.
On trial of the merits, the validity of the pledge of the mortgage note for the payment of an obligation in the principal sum of $12,000.00 was recognized and the obligation ranked first with preference and priority over all other levies, claims, or privileges, particularly over the tax lien of the United States of America. Plaintiff was thus held entitled to be paid by preference from the proceeds of a sale of the property mortgaged, sought by plaintiff herein through executory process. From a judgment thus rendered and signed, the defendants, Martha R. Cary, Walter B. Cary, and the United States of America, appealed.
Questions of both law and fact are presented for resolution. The material facts, concerning which there appears to be little, if any, dispute, may be first briefly summarized.
On August 25, 1958, Mr. and Mrs. Cary executed a negotiable promissory note for $15,000.00, payable to bearer on demand, and secured by a mortgage on certain-described real property in New Orleans, which comprises their home. The mortgage was accepted on behalf of all future holders by one Donald L. Guedry, son-in-law of the Carys and with whom Walter B. Cary was, at the time, engaged as a partner in a used car business. For several days following execution of the aforesaid note and mortgage, Cary carried the note in his pocket, whereupon, about September 1, 1958, on Guedry's suggestion, the note was placed in a locked drawer for safekeeping at their place of business. Guedry, who had free access to this drawer and its contents, on September 17, 1958, obtained a loan from plaintiff, Rex Finance Company, for which he executed his note for $12,000.00, the payment of which he secured by the pledge of the Cary mortgage note. This mortgage note has remained in the continuous possession of the finance company from September 17, 1958, until the institution of the foreclosure proceedings.
The record establishes, as the trial court found, that neither of the Carys was aware of the pledge of their note by their son-in-law; nor did either of them consent to or authorize its use by him. The evidence is convincing that Guedry came into possession of the note through either fraud, deceit, or embezzlement.
*674 The Guedry personal note was renewed from month to month in the regular course of business in its original amount upon payment of a monthly interest charge thereon until February 5, 1959, when a renewal note in the original principal sum was executed and exchanged for the original note which was also renewed February 26, 1959, when a new note in the sum of $15,000.00 was executed in consolidation of the original loan of $12,000.00 obtained by Guedry and $3,000.00 of an obligation due by Guedry individually to Joseph Bohrer, the managing partner of plaintiff Rex Finance Company. The note, however, was dated February 17, 1959, to correspond with the maturity date of the previous note. On Guedry's failure to pay this, his last personal note, plaintiff, after having made demand upon the Carys for payment, to no avail, instituted an action by executory process seeking the foreclosure of the property mortgaged.
In the meantime, on September 19, 1958, an income tax lien of the Government, covering a period from 1947 to 1952, inclusive, in the sum of $110,663.24, was filed against Walter B. Cary and Martha R. Cary, notice of the recordation of which was served upon the alleged tax debtors on June 10, 1959.
A question of primary importance is whether plaintiff became a holder, in due course, as pledgee, of the mortgage note. Concerned is the matter of plaintiff's good faith. In this regard, it may be pointed out Guedry testified that, at his father-in-law's instance, he arranged for the execution of the note and mortgage; that he prevailed upon Cary to place the note in a locked drawer at their place of business. There was no denial of these facts, nor that Guedry had free access to the drawer in which the note was placed.
The record further establishes that Guedry had, on numerous occasions, negotiated prior loans with the plaintiff from which a satisfactory and harmonious business relationship had been created. Joseph Bohrer, plaintiff's managing partner, was also aware of the family relationship, as well as the business relationship existing between Cary and Guedry.
We find no proof nor suspicious circumstances in the record from which plaintiff could have reasonably concluded that Guedry's possession of the note was precarious or wrongful, or that he was without authority to pledge it as security for the loan. Bohrer was persistent in his testimony as to his lack of notice or knowledge that Guedry's possession of the note was unlawful or that he was without right or authority to pledge it. No satisfactory or convincing proof was made to the contrary. Hence, we conclude, as did the trial court, that, after it was established that Guedry was without right or authority to the ownership or possession of the collateral note, plaintiff sustained the burden of proof placed upon it (LSA-R.S. 7:52, 59) and established, by a preponderance of evidence, that it acquired the note in pledge in good faith and for value, and, hence, that it became a holder as pledgee of the note in due course.
The evidence is particularly convincing that plaintiff was without any knowledge or notice whatsoever, at the time it made the loan and accepted the note in pledge, that Guedry, in reality, had no title to the note, nor authority to pledge it as security.
One who accepts a negotiable instrument in good faith and for value is under no duty to test the title of an unsuspicious negotiator. Holmes v. Falsho Realty Co., Orleans, 1931, 15 La.App. 585, 132 So. 519, 521; Tyler v. Whitney-Central Trust & Savings Bank, 157 La. 249, 102 So. 325, 326.
In the first of these cases, with respect to one's duty in accepting negotiable notes, the court stated:
"* * * The notes, being `bearer' notes, and not yet matured, were negotiable merely by delivery, and any *675 person accepting them in good faith for value would be under no obligation whatsoever to make inquiry, unless some suspicious circumstances arose in connection with their negotiation. * * *"
In the second of these cases, we note this observation:
"* * * If the notes are negotiable, then as each was made payable to the order of the maker, and by the maker indorsed in blank and delivered, each, by such indorsement, became, in effect, payable to bearer, and Ricau, as their bearer, was in position to pledge them, and the one to whom they were offered in pledge was in position to acquire a legal right to them as pledgee, provided such person accepted them without knowledge that Ricau had, as a matter of fact, no right to pledge them."
Even under the Negotiable Instruments Law, LSA-R.S. 7:1 et seq., the circumstance that an instrument was stolen is no defense as against a bona fide holder for value. Tyler v. Whitney-Central Trust & Savings Bank, supra; Consolidated Ass'n of Planters of Louisiana v. Avegno, 28 La. Ann. 552.
As to the rights of one acquiring a negotiable instrument from one having the instrument in possession and under his control, the court, in Theard v. Gueringer, 115 La. 242, 38 So. 979, 980-981, made these appropriate observations:
"A person holding in his possession and under his control, before maturity, a promissory note made to the order of the maker, and indorsed by her, may be presumed, as between that person and the public, the owner of the same, or as agent with full power to dispose of it. If the party owning the note has intrusted it to an agent, he has created a trust by means of which fraud could be perpetrated. By placing the note in his hands, he has held out to the world that they could trust him, and thrown upon himself the burden of loss when they have acted on that inducement.
"The mere possession of a negotiable note payable to the order of the payee, and indorsed by him in blank, or of a negotiable note payable to bearer, is in itself sufficient evidence of his right to present it, and to demand payment of it. The payment to such person will always be valid unless he is known to have acquired possession wrongfully. Vol. 1, Daniel's Negotiable Instruments (4th Ed.) §§ 573, 843, 844; Russell v. Longstaffe, 2 Douglass, 514; Bank [of Pittsburgh] v. Neal, 22 How. [96] 107, 16 L.Ed. 323; Davidson v. Lanier, 4 Wall. [447] 457, 18 L.Ed. 377; Angle v. [Northwestern Mutual] Insurance Co., 92 U.S. 330, 23 L.Ed. 556; Civ.Code La. art. 2145(1).
* * * * * *
"The rule that, where one of two innocent persons must suffer a loss, he who has so acted as to give occasion for the loss applies to this case. Mrs. Theard, in order to avoid the risk of fire, assumed the risk of theft by the custodian in whose possession and under whose control she placed the note. She herself placed it in Barnett's hands. His original possession of it was lawful. * * *"
There is nothing in the record, as heretofore observed, establishing that plaintiff took the note in pledge in bad faith. The preponderance of the evidence establishes the opposite.
Nor is there any merit in any contention that, by the exercise of vigilance, plaintiff might have discovered that Guedry was without authority to pledge the note. In this regard, it was observed in McDonald v. Harkness, 146 La. 920, 84 So. 205, 208:
"There is nothing in the record going to show bad faith, or the want of good faith, in either Batchelor or *676 Harkness. The circumstances at the time of the transfer, as described by the witnesses, are not such as to defeat Harkness' title to the note, or deprive him of the right to have the same canceled. His title would not be defeated by proof that, with the exercise of active vigilance, he might have discovered the existence of the allegations made by plaintiff. It must be shown that he (Harkness) acted in bad faith; that he had knowledge, or closed his eyes to facts or circumstances which would carry knowledge, of a defective title in Albin Tompkins. 2 Parsons on Bills, 272, 279; Goodman v. Simonds, 20 How. 343, 15 L.Ed. 934; Bank of Pittsburgh v. Neal, 22 How. 96, 16 L. Ed. 323."
A question as to the effective date of the attachment of a lien on real property resulting from a collateral mortgage has often arisen where a matter of priority between it and other liens is concerned. It appears, however, to be well settled in the jurisprudence of this State that a lien resulting from the recordation of a mortgage securing a collateral mortgage note arises not from the registry of the act of mortgage but from the date the note is pledged to secure a loan or other indebtedness, inasmuch as, prior to that date, there is no debt nor obligation to be secured, a prerequisite to the existence of a mortgage. Meeker v. Commissioners of Clinton & P. H. R. Co., 2 La.Ann. 971; Langfitt v. Brown, 5 La. Ann. 231; D'Meza v. Generes, 22 La.Ann. 285; Richardson v. Cramer, 28 La.Ann. 357; Roberts v. Bauer, 35 La.Ann. 453; Morris v. Executors of Cain, 39 La.Ann. 712, 2 So. 418; Walmsley v. Resweber, 105 La. 522, 30 So. 5; LSA-C.C. Art. 3293.
In the Walmsley case, in a concurring opinion, the late Justice Provosty clearly defined the operation of a collateral mortgage note.
"* * * A person may make his mortgage paper in this way and hold it as long as he pleases, and by merely issuing it create a mortgage (Roberts v. Bauer, 35 La.Ann. [453] 455); but, as against third persons, whose rights have attached in the meantime, the mortgage takes date and rank from issuance,that is, from acceptance of the mortgage by the contractee,and not from registry. So long as the maker holds the paper, there is no mortgagee and no mortgage. A person cannot, all by himself, make a mortgage. A mortgage is a contract, and a person cannot, all by himself make a contract. He may make the evidence of a mortgage,the mortgage notes, the mortgage act, and the registry; but he cannot, all by himself, make the contract. The contract can come into existence only by the intervention of a second person, a contractee. Mere acceptance of the notes by such second person will create the mortgage, will form the vinculum juris; but before and until such acceptance there is no contract and no mortgage. * * *"
Therefore, where the maker holds a note in his own possession until after a lien of another has attached to the property, the lien arising by the subsequent transfer of the note is subordinate to and outranked by the claim of those whose lien attached prior to such transfer. The converse is likewise true. Therefore, as of the date of the original pledge of the note, plaintiff was the holder, as pledgee, in good faith and for value, and, hence, in due course, and it, therefore, held the note free from any equities or defenses existing between the original parties.
Information subsequently received concerning the note or the pledgor's title thereto has no bearing on the pledgee's rights, and such fact is immaterial. In this regard, the following observation was made by the court in Hillard v. Taylor, 114 La. 883, 38 So. 594, 598:
"Subsequent information of the infirm origin of the notes would not have vitiated the notes in the hands of the *677 bank, and the bank could convey as good a title as it had itself, and, in order to do so, would not have had to practice concealment, but could do so openly and above board, with full revelation of the facts. The transferee, although fully advised of the original infirmity of the notes, would acquire as good a title as the transferror [sic] had. Therefore, unless Hillard was connected with the fraudulent negotiation of the notes, he would acquire from the bank as good a title as it had, even though fully advised either actually by the bank, or presumptively through the knowledge possessed by his agent, Taylor, of the fraudulent origin of the notes. Levy v. Ford, 41 La.Ann. 873, 6 South 671, and authorities cited at page 879 of 41 La.Ann., page 674 of 6 So.; Howell v. Crane, 12 La.Ann. 126, 68 Am.Dec. 765, and authorities cited. * * *"
Predicated upon the contention that during January, 1959, plaintiff Rex Finance Company received information as to the lack or want of authority of Guedry to pledge the Cary collateral mortgage note, the defendants would point out that, at the time of the execution of a new note in lieu of the former, and the pledge of the mortgage note to secure it, plaintiff had full knowledge of the fact that Guedry had acquired the note from the Carys through either fraud, deceit, or embezzlement, and that Guedry was, therefore, without title to the note and without right or authority to pledge it on the occasions of the execution of the new notes on February 5 and February 26, 1959.
In this regard, it is contended that, by the execution of a new note for $12,000.00 on February 5, 1959, the original debt was extinguished by novation, and, hence, that plaintiff's rights under the original pledge, no longer existed. Therefore, it was contended that a new pledge of the note was made subject to all equities and defenses existing between the makers and the pledgor of the note. It was likewise contended that, by virtue of the transaction of February 26, 1959, wherein Guedry executed another note for $15,000.00, bearing date of February 17, 1959, and for the payment of which the collateral continued to be held in pledge, the original indebtedness had been extinguished by payment, and, hence, that the pledge then made was subject to all the equities and defenses existing between the Carys and Guedry, the makers and pledgor of the note.
We find no merit in either of the contentions that the original debt was novated and extinguished by the execution of a renewal note on February 5, 1959, or that the original debt was extinguished by payment under circumstances connected with the execution of the $15,000.00 note. The circumstances relied upon in connection with the execution of the latter note were that the prior note was marked "paid" upon the return to plaintiff of plaintiff's check which had been issued simultaneously with the execution of the new note. The original debt, however, was not paid. The evidence of the debt, that is, the note itself, was only increased to include an additional loan which was consolidated with the original loan in the confection of the note. There was no intention of the parties to extinguish the former indebtedness. The intention was to substitute another note, as evidence of the indebtedness, which had been increased in amount. The manner in which the matter was handled was explained by Bohrer as a mere record of the transaction for plaintiff's office.
Novation is defined as a contract having, as its object two propositions; the first to extinguish an existing obligation, and the second to substitute a new obligation in its place. LSA-C.C. Art. 2185. Therefore, the pre-existing obligation must be extinguished; otherwise there can be no novation. If the obligation be only modified in some parts or respects and a portion of the original obligation remains, there is no novation. LSA-C.C. Art. 2187.
*678 Thus, the original debt of $12,000.00 remained and was incorporated in and formed a part of the $15,000.00 note executed February 26, 1959, and dated February 17, 1959. The surrender of the original evidence of the debt and the substitution of new evidence therefor did not operate as an extinguishment of the obligation. An extension of the maturity of the obligation only was changed. Thus, it was held that a compromise between creditor and debtor by which the amount of the debt, the terms and mode of payment, the rate of interest, and the nature of the securities changed, does not effect a novation unless the intention of the parties to novate the obligation is particularly expressed. Baker v. Frellsen, 32 La.Ann. 822; Succession of Irwin, 33 La.Ann. 63, 72; Saloy v. Dragon, 37 La.Ann. 71, 73; Studebaker Bros. Mfg. Co. v. Endom, 51 La. Ann. 1263, 1267, 26 So. 90, 72 Am.St.Rep. 489; Reconstruction Finance Corporation v. Thomson, 186 La. 1, 171 So. 553. Novation is not to be presumed and the intention to make it must clearly result from the terms of the agreement or by a full discharge of the original debt. LSA-C.C. Art. 2190; Interstate Trust & Banking Co. v. Sabatier, 189 La. 199, 179 So. 80. See, also: Davis v. Welch, 128 La. 785, 55 So. 372; Varnado v. W. B. Thompson & Co., 129 La. 15, 55 So. 693; Farmers' Nat. Bank v. Belle Alliance Co., 142 La. 538, 77 So. 144; W. W. Carre Co. v. E. J. Stewart & Co., 166 La. 317, 117 So. 238; Bank of Coushatta v. Coats, 170 La. 163, 127 So. 587.
Nor, does a pledgee, by the merger of debts, lose any of its rights. In re Canal Bank & Trust Co., 186 La. 366, 376, 172 So. 421, 424; Brock v. Citizens Bank & Trust Co., 187 La. 1078, 175 So. 673.
Inasmuch as the collateral note was under continuous pledge to Rex Finance Company, which received it as such in good faith, for value and before maturity, it is immaterial that it may have subsequently received information from which Guedry's title to the note and his right to pledge it may be questioned. Therefore, a question as to whether plaintiff ever had such information need not be resolved.
Because of the fact that plaintiff acquired said collateral note in pledge before maturity in good faith and for value and without notice or knowledge of the equities or defenses existing between the makers and pledgor of the note, the conclusion is inescapable that plaintiff occupies the position of an innocent third holder of the mortgage note, free of all equities or claims that may have existed in favor of the makers. Reconstruction Finance Corporation v. Thomson, supra. The plaintiff has always retained possession of the pledged collateral note. Neither the collateral note nor the debt for which it was pledged to secure has been paid. Since the note was given as collateral security for payment of a loan, it must remain as such security until the loan is satisfied, unless the original parties agree to its surrender or the pledgee in some manner discharges or releases it.
As to plaintiff's claim and assertion of priority of liens as regards the increased portion of the indebtedness, it may be pointed out that plaintiff has neither appealed nor answered defendants' appeal. Hence, as that portion of plaintiff's claim was disallowed, no issue is now presented with reference thereto, and it may be properly considered abandoned, which we deem properly so because the pledge to secure such increase was subsequent in date to the filing of the Government's lien for taxes.
Plaintiff's pledge of the collateral mortgage note having preceded the recordation of the tax lien of the Government, the Government relies upon the contention that the original obligation was novated and that a subsequent pledge of the collateral note to secure a new debt created a lien or privilege inferior in rank to the Government's lien which had been previously entered of record, or that the initial obligation due *679 plaintiff was extinguished by payment, with the same result. These contentions having been resolved adversely to the Government, it follows that, under U.S.C.A. Title 26, § 6323(a) (2), since the Government's tax lien was not filed until after the pledge of the collateral mortgage note to plaintiff, the lien and privilege of the Government are inferior to and are outranked by plaintiff's claim, lien, and mortgage.
Accordingly, for the reasons herein assigned, the judgment appealed should be, and it is hereby, affirmed at defendants-appellants' cost.
Affirmed.