CULPEPPER, Judge.
This is a suit by ordinary process for the balance due on a promissory note and recognition of a chattel mortgage securing same, through the seizure and sale of a “trencher” machine. The defense is a failure of consideration due to the defective condition of the machine for whose purchase the note was given. The issue is whether the plaintiff bank is a holder in due course and as such immune from this defense. From an adverse judgment on the merits, the plaintiff appealed.
There is little, if any, dispute as to the facts. On February 22, 1966, the defendant, Mr. J. C. Calk of Jena, Louisiana, went to J. B. Lee Tractor & Implement Company, Inc. in Shreveport (hereinafter referred to as the dealer) to purchase a machine to dig trenches in connection with his business as an electrical contractor. After negotiations, he agreed to purchase the trencher in question, to be financed over a period of three years. The dealer made an application to the plaintiff bank, which had handled its financing for about fifteen years, for approval of a loan to Calk of approximately $3,500, representing the balance which would be due on the purchase price of the trencher. On that same date, February 22, L966, the bank obtained a credit report on Mr. Calk, which was satisfactory, and the oank approved the transaction.
The next day, February 23, 1966, Mr. Calk purchased the trencher and executed the note for the face amount of $4,240.80, payable to “Bearer” at the Commercial National Bank in Shreveport in 36 monthly installments of $117.80 each. This note was secured by the mortgage from Calk to J. B. Lee Tractor & Implement Company, Inc. covering one “New Trencher”. The note and mortgage were executed on forms furnished to the dealer by the bank. Calk then returned to Jena where the machine was to be delivered to him by the dealer.
The next day, February 24, 1966, J. B. Lee Tractor & Implement Company, Inc. endorsed the note and sold it to the plaintiff bank for valid consideration.
Within a few days after the sale, the dealer delivered the trencher to Calk in Jena. It was about a week or ten days later that Calk first tried to use the machine and found that it would not operate properly. Due to a loss of power, it would not dig and move at the same time. It would perform only one of these operations at a time. Hence it was of no use as a trencher. Calk contacted the dealer (Calk admittedly did not contact the bank) and they finally sent a mechanic, but he was unable to fix the machine. Calk again.tried to use the machine a few times but to no avail. By that time he had paid the first two monthly installments, but then he stopped. This suit was filed on August 9, 1966. The dealer took voluntary bankruptcy on September 7, 1966.
LSA-R.S. 7:52 defines a holder in due course as one who takes an instrument under certain conditions, the condition applicable here being:
“(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”
LSA-R.S. 7:56 defines “notice” as used in the above quoted Section 52(4) thus:
“To constitute notice of an infirmity in the instrument or defect in the title of *580 the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.”
Our jurisprudence is established that when the maker of a negotiable instrument has proved lack of consideration therefor, as Mr. Calk has done, the burden then shifts to the holder to prove that at the time it acquired the instrument it had no notice of the infirmity. Rein v. Merriell, La.App., 150 So.2d 73; Liberal Finance Westwego, Inc. v. Haughton, La.App., 143 So.2d 245; First National Bank of Lafayette v. Romero, La.App., 150 So.2d 640 (3rd Cir. 1963). Hence, in the present case the plaintiff bank had the burden of proving that it had no notice of the lack of consideration for the note. We find the evidence clearly shows they sustained this burden.
Essentially, defendant’s argument is that there was such a close connection between the plaintiff bank and the implement dealer that the bank was actually a party to the transaction and is therefore subject to all of the defenses which can be made against the dealer. The factors on which defendant relies (and which the trial judge used) to show this close connection can be summarized as follows: (1) The long history of financial dealings between the bank and the dealer; (2) furnishing the note and chattel mortgage forms to the dealer; (3) having knowledge of the sale before its completion, making a prior credit check on the purchaser and agreeing in advance to finance the transaction; (4) that there were other sales by the dealer, which had been financed by the bank and in which the bank knew defective merchandise was delivered.
As to the first three above listed factors, these have been rejected in previous cases in which such “close connection” arguments were made. This established jurisprudence is succinctly summarized in Fuller v. Mel Parnell Plymouth, Inc., La.App., 140 So.2d 899 (4th Cir. 1962) as follows:
“Plaintiff argues that there was a close connection between Associates Discount Corporation and Mel Parnell Plymouth, Inc. in that credit sales made by Mel Parnell were handled on forms furnished by Associates, that Associates furnished Mel Parnell with a copy of its rate chart, that the note and chattel mortgage were printed on the same piece of paper and separated by perforations, that the obligation was made payable at the office of Associates, that the automobile was not delivered until after Associates had approved plaintiff’s credit, that the witnesses and notary were not present when the note and mortgage were signed and that Associates should be held to have directed the whole transaction. All of these arguments have been rejected by the Supreme Court. See Universal C. I. T. Credit Corporation v. Alker, 239 La. 1057, 121 So.2d 78; White System of New Orleans v. Hall, 219 La. 440, 53 So.2d 227.”
As to the fourth factor relied on by defendant, i. e., previous sales of defective merchandise sufficient to put the bank on inquiry, the evidence does not support such a defense. One of the bank’s vice presidents testified that over the period of fifteen years during which the bank had furnished approximately three million dollars of financing for this dealer, there had, of course, been instances in which the merchandise sold was defective, but there is simply no evidence to show that in these instances the dealer failed to make satisfactory adjustments or repairs, or that there was any failure of consideration for the notes purchased by the bank. On the contrary, the bank officials testified they had no reason to suspect the dealer might be knowingly selling defective machines; and that in all these fifteen years the bank had lost only $100 on this dealer’s notes, and that was due to a misunderstanding.
*581 Express notice of an infirmity in a negotiable note is not indispensable to destroy the good faith of the holder, but, if notice is to be presumed from the circumstances, they must be such as would necessarily put a reasonable person on inquiry to ascertain the true facts. Maxwell v. W. B. Thompson & Company, 175 La. 252, 143 So. 230; Rein v. Merriell, La.App., 150 So.2d 73 (4th Cir. 1963); Collins v. Magee, 15 La.App. 66, 130 So.2d 267; Holmes v. Falsho Realty Company, 15 La.App. 585, 132 So. 519; Rex Finance Company v. Cary, La.App., 145 So.2d 672, affirmed at 244 La. 675, 154 So.2d 360; First National Bank of Lafayette v. Romero, La.App., 150 So.2d 640 (3rd Cir. 1963). In the present case the few instances of sales by the dealer where defects developed in the merchandise were clearly not sufficient to put the bank on inquiry.
In his brief filed in this court, defendant makes the additional argument that the bank should have known at the time it purchased the note in February of 1966 that the dealer was in a bad financial condition; and that this should have prompted the bank to investigate the dealer’s transactions more closely. There is no evidence to support this contention. The officers of the bank testified that they had no knowledge of the dealer’s bad financial condition until about June of 1966. The record shows the dealer’s petition in voluntary bankruptcy was not filed until September of 1966.
We have carefully studied the cases relied on by the defendant and find all are readily distinguishable. Most of them involved factual situations where the circumstances were such as to show the holder either had notice or was necessarily put on inquiry as to an infirmity in the note. For instance, in Commercial Credit Corporation v. Setliff, La.App., 44 So.2d 167 (2nd Cir. 1960) the note represented the purchase price of a meat counter which was never even delivered by the dealer to defendant. The evidence showed that the plaintiff finance company had previously purchased other notes from this same dealer involving transactions where the equipment purchased was never delivered; that plaintiff knew the dealer was in bad financial condition; that the circumstances surrounding the signing of the note and chattel mortgage were suspicious in that plaintiff’s own employees subscribed their names as witnesses and as notary; that after plaintiff purchased the note, the dealer, rather than the defendant, paid the first seven monthly installments on the note which indicated knowledge or acquiescence on the part of the finance company that these payments were made by the dealer because the meat counter had never been delivered to defendant. The court held the circumstances were such that the finance company knew or should have been put on inquiry and discovered, before acquiring the note, that there was no consideration therefor.
Another case relied on by defendant is Rein v. Merriell, La.App., 150 So.2d 73 (4th Cir. 1963) where the defendants, two semi-illiterate negroes, signed mortgage notes payable to a building contractor for improvements to their home. The contractor sold the note to plaintiff and absconded with the funds without performing any work whatsoever. The facts showed that the plaintiff was an attorney and a close friend, ex-classmate and former sharer of office space with the attorney who represented the contractor and prepared the note; that plaintiff was a social friend of the contractor and knew the source of the note; that he knew the contractor was in bad financial condition and desperately needed money to continue his business of home improvement. The court held that, even if plaintiff did not have actual knowledge of the infirmities in the note, the circumstances were such that he certainly should have been put on inquiry.
Thus, a study of the cases relied on by defendant shows that they are readily distinguishable on the facts from the present matter. Here the plaintiff bank had no *582 knowledge of the dealer’s bad financial condition, if indeed he was in such financial straits as early as February, 1966. Also, there is no evidence of any prior instances of the dealer taking notes for which there was no consideration. Hence, there was no reason for the bank to inquire about this transaction before it purchased the note.
The defendant, Calk, has filed a separate appeal in which he requests that, in the event we render judgment against him, this case should be remanded in order that he might prosecute in these proceedings a third party demand against J. B. Lee Tractor & Implement Company, Inc. The record shows that this suit was filed on August 9, 1966. On October 6, 1966, the defendant filed an answer and a third party demand against the said dealer. The case was first set for trial on January 16, 1967, but was continued until February 27, 1967. At the outset of the trial on the latter date, defendant filed an “Objection to Trial in Present State of Record and Motion for Continuance”. The alleged grounds were that the sheriffs of both Caddo and Bossier Parishes had been unable to locate and serve Mr. J. B. Lee, agent for service of process of the dealer; and that defendant did not want to go to trial until the said third party defendant had been served and cited and made a party to these proceedings. The motion states that defendant had been trying to locate Mr. Lee and thus far had been unsuccessful but that if given additional time he thought he could locate him.
The inability to serve and cite a third party defendant, or to try the third party demand at the same time as the principal demand, is not a peremptory grounds for continuance, LSA-C.C.P. Art. 1602. This is therefore a discretionary grounds for continuance, LSA-C.C.P. Art. 1601. Under the circumstances, there was no abuse of discretion by the trial judge .in refusing to delay, the progress of the principal demand. There was no assurance of when, if ever, Mr. Lee could be located for service of process. Furthermore, defendant’s right to proceed against the third party defendant in a separate suit is not affected, LSA-C.C.P. Art. 1113. Out of an abundance of precaution, we will expressly reserve all of defendant’s rights to proceed against the dealer.
Finally, able counsel for the defendant makes an impressive argument that, as between these two innocent parties, Mr. Calk and the bank, equity demands that the bank, which is in the business of financing loans, and is better able to sustain a loss, should take this loss as a normal part of it business. Regardless of our personal feelings on the matter, this argument addresses itself to the policy established in our negotiable instruments law by the legislature. As far as this court is concerned, the law is clear, and we are duty bound to follow it.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Commercial National Bank in Shreveport, and against the defendant, J. C. Calk, in the full sum of $4,240.80, together with 8% per annum interest thereon from May 23, 1966 until paid, and 25% on both principal and interest as attorney’s fees, less credits of $117.80 each for the payments made on March 27, 1966 and April 27, 1966.
It is further ordered, adjudged and decreed that plaintiff’s chattel mortgage on the following described movable property be recognized, maintained and enforced in accordance with law, that the said movable property be seized and sold in accordance with law and that the claim of plaintiff, in principal and interest, attorney’s fees and costs be paid out of the proceeds thereof with preference and priority over all others whatsoever, the movable property being described as:
One (1) Davis Trencher, Model 500, Serial or Motor No. 3402.
It is further ordered, adjudged and decreed that all rights of the defendant, J. C. Calk, against J. B. Lee Tractor & Implement Company, Inc., be reserved to him.
*583 All costs in the lower court, as well as the costs of this appeal, are assessed against the defendant appellee.
Reversed and rendered.