435 So.2d 1058 (1983)
ASIAN INTERNATIONAL, LTD.
v.
MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., et al.
No. 83 CA 0216.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
*1060 Floyd J. Falcon, Jr., Baton Rouge, for plaintiff-appellant Asian Intern., Ltd.
Lee C. Kantrow, Baton Rouge, for defendant, third party plaintiff, plaintiff-in-reconvention-appellee Merrill Lynch, Pierce, Fenner & Smith, Inc.
John S. Thibaut, Baton Rouge, for defendant-third party defendant-appellee H. Grady Smith, Jr.
Michael O. Heese, St. Francisville, for defendant-third party defendant-appellee Ben F. Fort, Jr.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is an appeal by Asian International, Ltd. from a summary judgment in favor of Merrill Lynch, Pierce, Fenner and Smith, Inc.[1]
On March 30, 1982, Asian International, Ltd. (Asian) filed suit against Merrill Lynch, Pierce, Fenner and Smith, Inc. (Merrill Lynch), Ben F. Fort, Jr. (Fort), and H. Grady Smith, Jr. (Smith) alleging defendants' liability, individually and in solido, for tortious conversion of a $200,000.00 check and for damages for the loss of corporate opportunity resulting from such tortious conversion.[2]
The dispute among the parties arises from the following facts. On or about July 28, 1981, Cathay Trading Corporation delivered to Asian a check made payable to Asian International, Ltd. in the amount of $200,000.00, in full payment for ten separators sold by Asian to Cathay. Smith, the president of Asian, and Edmund C. McCallum, treasurer of Asian, subsequently endorsed said check to the order of Fort, in payment of an alleged loan obligation owed by Asian to Fort. Fort then deposited the endorsed check in his account with Merrill Lynch. Merrill Lynch credited the funds to Fort's account and received payment from the payor bank.
Merrill Lynch filed a motion for summary judgment claiming it was a holder in due course of the check and asserting that, as such, it took the instrument free from all claims, including those asserted by Asian.
The trial court granted the motion for summary judgment in favor of Merrill Lynch and dismissed Asian's suit.[3] The trial court based its judgment upon finding that there were no genuine issues of material fact and that Merrill Lynch was a holder in due course as a matter of law.
Asian appeals with the following specifications of error:
(1) The trial court erred in holding, as a matter of law, that Merrill Lynch sustained the burden of proving its status as a holder in due course; and
(2) The trial court erred in finding that there were no genuine issues of material fact.

SPECIFICATION OF ERROR NO. 1
The first issue is whether Merrill Lynch sustained its burden of proving its status as a holder in due course as a matter of law.
La.R.S. 10:3-302(1) defines a holder in due course as:
"... a holder who takes the instrument
(a) for value; and
(b) in good faith; and
(c) without notice that it is overdue or has been dishonored or any defense against or claim to it on the part of any person."
The status of a holder in due course is significant to the extent that as such he takes the instrument free from all claims to *1061 it on the part of any person and all defenses of any party to the instrument with whom the holder has not dealt, with minor exceptions. La.R.S. 10:3-305.[4]
In order for one to enjoy the status of a holder in due course, the four elements of La.R.S. 10:3-302(1) must exist simultaneously during possession of the negotiable instrument. La.R.S. 10:3-307(3) and the corresponding comments in the Uniform Commercial Code (UCC) indicate that the person claiming the rights of a holder in due course must sustain his burden by affirmative proof of all elements.

HOLDER
Any person who asserts rights of a holder in due course must first prove that he is a "holder". A holder is a person who is in possession of ... an instrument ... drawn, issued, or endorsed to him or to his order or to bearer or in blank. La.R.S. 10:1-201.
Negotiation is the process by which the transferee of an instrument becomes a holder. La.R.S. 10:3-202(1).[5] The comments to that article in the UCC indicate that negotiation is a special form of transfer, the importance of which lies in the fact that it makes the transferee a holder. Stated another way, an endorsement by a holder of an instrument payable to order is necessary for a negotiation of the instrument, for only by a negotiation may a third party become a holder of the instrument. "Developments in the Law, 1980-1981: Banking Law," 42 LLR 330 (1982).
In the present case, the $200,000.00 check was delivered to Fort with the following endorsement:
"Asian International, Ltd.
s/n H. Grady Smith, Jr.
s/n Edmund C. McCallum
for deposit to
order of
Ben F. Fort, Jr."
In order for Merrill Lynch to become a holder of the instrument, the instrument had to be negotiated. Negotiation required an endorsement by Fort.
When Fort presented the check for deposit to his Merrill Lynch account, a Merrill Lynch employee wrote "pay to: Merrill Lynch, Pierce, Fenner and Smith" on the instrument. The endorsement on the check prior to deposit appeared as follows:
"Asian International, Ltd.
s/n H. Grady Smith, Jr.
s/n Edmund C. McCallum
pay to:
Merrill Lynch, Pierce, Fenner and Smith
for deposit to
order of
Ben F. Fort, Jr."
The check was then deposited into Fort's account.
Under La.R.S. 10:4-205(1), a depositary bank which has taken an item for collection may supply any endorsement of the customer which is necessary to title unless the item contains the words "payee's endorsement required" or the like. In the absence of such a requirement, a statement placed on the item by the depositary bank to the *1062 effect that the item was deposited by a customer or credited to his account is effective as the customer's endorsement. This provision was designed to speed up collections by eliminating any necessity to return to a non-bank depositor any items he may have failed to endorse.
La.R.S. 10:1-201 defines a bank as any person engaged in the business of banking. The receiving of deposits and issuing bills and notes has been defined as engaging in the banking business. (See Rosenblum v. Anglim, 135 F.2d 512, 9th Cir.1943). It was also held in the above cited case that although the banking business involves more than the accepting and paying out of deposits, an institution which exercises only these two functions may be carrying on a "banking business", if these things are done as a regular business. Under this definition, we find La.R.S. 10:4-205(1) applicable to Merrill Lynch, even though Merrill Lynch is not a bank incorporated under the provisions of Title 6 of the Louisiana Revised Statutes.[6] Since Merrill Lynch provided Fort with a general securities and a checking account, much like that provided by a depositary bank to its depositing customer, the relationship between Merrill Lynch and Fort is analogous to that of a bank and its customer.
Merrill Lynch supplied the required endorsement which was effective as the customer's endorsement, and the check was thereby negotiated to Merrill Lynch. Therefore, we find that Merrill Lynch was a holder as envisioned by La.R.S. 10:3-302(1).

VALUE
A person gives "value" for rights if he acquires them in return for the extension of immediately available credit. La. R.S. 10:1-201. Although appellant does not assert that Merrill Lynch did not take the instrument for value, the facts of the case affirmatively show that upon deposit of the check Fort was given immediate credit for $200,000.00, the full amount of the check. Therefore, we find that Merrill Lynch gave value for the instrument.

GOOD FAITH
Good faith is defined as honesty in fact in the conduct or transaction concerned. La.R.S. 10:1-201. Good faith is determined on a reasonableness standard, in that the facts must be such as would necessarily put a reasonable person on inquiry to ascertain the true facts. Commercial National Bank in Shreveport v. Calk, 207 So.2d 578 (La.App. 3d Cir.1968).
Appellant contends that Merrill Lynch was not in good faith when it took the instrument because of the questionable corporate authority of Smith and McCallum to endorse the check on behalf of Asian.[7] Although these allegations may be pertinent as between the immediate parties (Smith, McCallum, and Asian), they do not affect third parties who take the instrument because the signatures are presumed to be authorized. La.R.S. 10:3-307(1)(b). Appellant, however, offered no facts to prove that Merrill Lynch lacked the requisite good faith at the time it took the instrument. The deposition of a Merrill Lynch employee, however, reveals that the check was taken by Merrill Lynch in good faith, and there is no controverting evidence in the record. Therefore, we find that Merrill Lynch took the instrument in good faith.
WITHOUT NOTICE OF CLAIMS OR DEFENSES
La.R.S. 10:1-201 provides that:
"A person has `notice' of a fact when
(a) he has actual knowledge of it; or
(b) he had received notice or notification of it; or
(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists." *1063 Appellant alleges no particular facts, other than lack of authority of Smith and McCallum as officers of Asian to endorse checks, that Merrill Lynch had notice of existing claims or defenses. However, when the effectiveness of a signature is put at issue, the signature is presumed to be authorized and does not affect third parties who take the instrument. La.R.S. 10:3-307(1)(b); La.R.S. 10:3-403. Appellant asserted no other facts to prove that Merrill Lynch knew or should have known that a claim or defense existed. Merrill Lynch established by uncontroverted testimony that it took the $200,000.00 check with no notice of any claim or defense. Therefore, we find that Merrill Lynch took the check without notice of any claim or defense to the check on the part of any person.
The trial court held, and we agree, that Merrill Lynch took the instrument as a good faith holder, for value, and without notice of any claim to it and that Merrill Lynch is a holder in due course, entitled to judgment as a matter of law.

SPECIFICATION OF ERROR NO. 2
The second issue on appeal is whether certain disputed facts are material as contemplated by LSA-C.C.P. art. 966, so as to preclude summary judgment.
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Munson v. Safeco Ins. Co., 411 So.2d 578 (La. App. 1st Cir.1982). The burden of proving that there is no genuine issue of material fact in dispute is upon the mover of summary judgment. Munson v. Safeco Ins. Co., supra.
Appellant contends that the matter was not ripe for summary judgment in that certain material facts are in dispute.[8]
We agree that some facts remain in dispute; however, they are not material to the determination of Merrill Lynch's status as a holder in due course.
The trial court found that there was no genuine issue of material fact and granted *1064 the motion for summary judgment in favor of Merrill Lynch. We agree that summary judgment was properly granted since, on the uncontested material facts before the trial court, defendant Merrill Lynch was a holder in due course and was entitled to judgment as a matter of law.
For the above reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] A related appeal pending in this suit, bearing Docket Number 82 CA 0614, questions the right of Merrill Lynch to invoke a concursus and place the funds it holds on deposit into the registry of the court.
[2] In response to this suit, Merrill Lynch, in addition to seeking to invoke a concursus, filed a third party demand against Fort, Smith, and McCallum. The third party demand is not before us on this appeal.
[3] The trial court, in dismissing Asian's suit against Merrill Lynch, stated that such dismissal would not affect Asian's rights, if any existed, against Smith, McCallum, or Fort.
[4] La.R.S. 10:3-305 provides:

"To the extent that a holder is a holder in due course he takes the instrument free from
(1) all claims to it on the party of any person; and
(2) all defenses of any party to the instrument with whom the holder has not dealt except
(a) minority, to the extent that it is a defense to a simple contract; and
(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation an absolute nullity; and
(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and
(d) discharge in insolvency proceedings; and
(e) any other discharge of which the holder has notice when he takes the instrument."
[5] La.R.S. 10:3-202(1) provides:

"Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement; if payable to bearer it is negotiated by delivery."
[6] See La.R.S. 6:231 et seq.
[7] Appellant argues that presentment of the check to Merrill Lynch without an accompanying corporate resolution, in light of the fact that such was standard practice in the industry, adversely affected Merrill Lynch's good faith. However, Title 10 of the Louisiana Revised Statutes imposes no such duty.
[8] Asian contends that contradictory evidence exists as to the following facts:

1. Asian did not owe Fort $200,000.00. (Barrett affidavit)
2. Neither Smith nor McCallum wrote "pay to" on the back of the check. (Smith deposition, Barrett affidavit)
3. Fort was not authorized by Asian to deposit Asian's check to his personal account. (Barrett affidavit)
4. Neither Smith nor McCallum were authorized to deliver the check made payable to Asian to Fort. (Barrett affidavit)
5. McCallum was unaware that Smith intended to deliver the check to Fort for deposit to Fort's personal account. (Barrett affidavit)
6. The minutes of Asian contain no authorization to anyone to endorse and/or deliver the $200,000 check to Fort. (Barrett affidavit)
7. Standard practice and procedure requires that all three parties to a three party transaction be clearly identifiedand only after checking the documentation supporting such a transaction will the big brokerage firms honor a third party check. As a minimum, it is required that any corporate endorsement clearly show on the face thereof the capacity of the individual making the endorsement. It is also required that proper corporate resolutions establishing the officer's authority to act be presented and examined. (Jordan affidavit)
8. Smith did not specify his corporate capacity, if any, on the back of the check. (See check, Smith deposition, P. 31)
9. McCallum did not specify his corporate capacity, if any, on the back of the check. (See check, Smith deposition, P. 31)
10. No corporate resolution was delivered to Fort with the check. (Smith deposition, P. 31)
11. Neither Smith, nor McCallum went to Merrill, Lynch with Fort. (Smith deposition, P. 31 and 32) Neither were present to clarify their alleged corporate capacity.
12. Smith assumes that a Merrill, Lynch employee wrote "pay to" on the back of the check. (Smith deposition, P. 33)