397 So.2d 42 (1981)
Johnny Lee CARROLL, Plaintiff-Appellee,
v.
TWIN CITY PONTIAC USED CARS, INC., Defendant-Appellee,
First National Bank of Rayville, Third-Party Defendant-Appellant.
No. 14487.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
Cotton, Bolton, Roberts & Hoychick by John Hoychick, Jr., Rayville, for third-party defendant-appellant.
Coenen, Berry & Bruyninckx by James W. Berry, Rayville, for plaintiff-appellee, Johnny Lee Carroll.
Thomas H. Fowler, Jr., Monroe, for defendant-appellee, Twin City Pontiac Used Cars, Inc.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
Plaintiff Carroll sued Twin City Pontiac Used Cars, Inc. (Twin City) for damages for the wrongful seizure of a 1976 Buick automobile allegedly purchased by plaintiff *43 from defendant. Carroll asked alternatively, and in the event the court found that there had been no completed sale to him of the seized vehicle, that defendant return to him a 1970 Chrysler which plaintiff had traded in on the Buick, together with a $100 cash payment. Twin City answered, denying the wrongful seizure, and filed a third party demand against First National Bank of Rayville (First National), alleging that any damages suffered by Carroll resulted from third party defendant's breach of an oral promise to honor a draft drawn for partial payment of the purchase price of the Buick. First National answered the third party demand, asserting that it had dishonored the draft because Carroll did not pay the sales tax and license fee which would have been due in connection with his purchase of the Buick. First National also filed an exception of no cause of action, which was overruled.
The trial judge determined that there had been no wrongful seizure of the Buick because Carroll had voluntarily released it to Twin City. However, he reasoned that Carroll was entitled to recover the $200 which Twin City had received when it sold the Chrysler which Carroll had traded in. Therefore, judgment was rendered in favor of Carroll and against Twin City for that sum. Further, apparently because of his conclusion that First National had breached an oral promise to honor the draft, the trial judge rendered judgment on the third party demand in favor of Twin City and against First National for the sum of $200holding, in effect, that First National should be ultimately liable for any damages sustained by Carroll.
First National appealed the judgment against it on the third party demand. Twin City neither appealed nor answered First National's appeal. Carroll purported to answer First National's appeal. However, as stated, that appeal was from the judgment in favor of Twin City on the third party demand. Since Twin City did not appeal the judgment in favor of Carroll, Carroll's answer could not constitute an appeal to revise the judgment in his favor on the original demand against Twin City.[1] Consequently, the only appeal before this court is that of First National requesting reversal of the lower court judgment on the third party demand.
Context Facts
In February 1980 Carroll visited Twin City's used car lot in Monroe and expressed interest in buying a 1976 Buick. Upon ascertaining the purchase price, Carroll went to First National and secured a loan commitment of $3200, to be secured by a chattel mortgage covering the Buick. Carroll then returned to Twin City where he informed the salesman with whom he was dealing, Arrington, that First National had agreed to lend him $3200 to finance his purchase of the used Buick. Arrington telephoned Stafford, First National's president, and received confirmation of that information. Stafford assured Arrington that a draft upon First National, in the sum of $3200, accompanied by the customary documents, would be honored.
On February 12, 1980 Twin City sold to Carroll the 1976 Buick for an invoice price of $4045. Carroll was allowed a trade-in allowance of $845 for a 1970 Chrysler. The balance of $3200 was represented by a draft in that amount prepared by Twin City, naming it as payee, drawn upon First National, and signed by Carroll. This draft with accompanying documents was promptly transmitted through regular banking channels to First National. In the meantime, the 1970 Chrysler traded in by Carroll was sold by Twin City for a wholesale price of $200.
First National held the draft for two or three weeks and then returned it to Twin *44 City dishonored. Stafford testified that First National did not honor the draft because Carroll had not paid the sales tax and license fee due in connection with his purchase of the car.
When Twin City received the draft back, Arrington immediately contacted Carroll to inform him of this development. Carroll was further advised that, unless he could promptly secure other financing, the Buick should be returned to Twin City for storage while the parties explored the possibility of a loan from such other source. The next day Carroll drove the Buick back to Twin City's lot in Monroe and handed the keys to Arrington. Twin City offered Carroll a $100 refund but the tender was refused. This litigation ensued.
Liability of First National to Twin City
As we have previously indicated, the sole issue presented on this appeal is whether First National is liable to Twin City for breach of the oral promise to honor the $3200 draft. Preliminary to a discussion of that question, it should be noted that Twin City's third party demand is not on the draft but is for damages for the bank's failure to honor that instrument.
La.R.S. 10:3-409 provides:
(1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.
(2) Nothing in this Section shall affect any liability in contract, tort or otherwise arising from any letter of credit or other obligation or representation which is not an acceptance. (Emphasis added)
The import of this statutory provision appears to be clear. Although the drawee on a draft is not liable on the instrument until it is accepted, this does not preclude liability on the part of the drawee to the holder arising apart from the instrument, i. e., in tort or upon some other basis because of the drawee's representation that the instrument will be accepted. Furthermore, La.R.S. 10:4-103 imposes upon banks a duty to exercise ordinary care in the handling of commercial paper and provides for damages in the event of the violation of that duty.[2]
In this case First National not only breached its promise to Twin City to honor the $3200 documentary draft, but also failed to exercise ordinary care in handling that item by unreasonably delaying its decision to dishonor the paper. Consequently, the trial judge correctly held that the bank was liable in damages to Twin City.
Since there had apparently been a mutual agreement by Carroll and Twin City to rescind the sale of the Buick,[3] Twin City could not recover the amount of the draft under La.R.S. 10:4-103(5). However, because First National acted in bad faith in handling this transaction (breach of promise to honor draft and unreasonable delay in holding instrument prior to dishonoring), third party plaintiff was entitled to recover damages sustained by it. The record reveals that Carroll used the Buick for about a month and drove the car some 1500 mileswith the resultant depreciation in its value. Furthermore, during the time that First National was holding the draft Twin City, relying upon the bank's promise to honor that instrument, sold at wholesale for $200 the car traded in by Carroll. The judgment of the lower court decreed that Twin City pay that sum to Carroll. Under these circumstances we cannot say that the trial judge was manifestly in error in fixing the amount of damages for Twin City by First National at $200.
For these reasons we affirm the judgment of the lower court on the third party demand by Twin City against First National, at appellant's cost.
NOTES
[1] La.C.C.P. Art. 2133 provides in part:

"The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer." (Emphasis added)
As pointed out in the Comment to this article, an answer to an appeal cannot be used by an appellee to revise, modify or reverse a judgment rendered in favor of another appellee.
[2] La.R.S. 10:4-103(5) provides:

(5) The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.
[3] Although this was not an explicit finding by the trial judge, it is implied in his oral reasons for judgment.